JOSEPH ULICHNY *v.* CITY OF BRIDGEPORT ET AL.
(14910)

PETERS, C. J., CALLAHAN, BORDEN, BERDON and PALMER, Js.

Argued May 6—decision released July 19, 1994

*Robert M. Davidson,* with whom, on the brief, was *Howard B. Naylor,* for the appellant (plaintiff).

*John H. Barton,* for the appellee (named defendant).

BERDON J. The principal issue in this case is whether the defendant city's acts of appealing from the decisions of a local zoning commission and otherwise exercising its legal rights as a property owner constituted a constructive taking, or "inverse condemnation,"[1] of the plaintiff's neighboring property.

The plaintiff, Joseph Ulichny, brought this suit against the defendant, the city of Bridgeport, in 1985.[2] In his amended complaint, he alleged that the defendant had "taken" his property in violation of state law[3] by improperly appealing from certain decisions of a local zoning commission favorable to him and otherwise improperly exercising its legal rights as a neighboring property owner.[4]

---

[1] While eminent domain refers to the formal legal proceeding whereby a government asserts its rights to condemn private property, inverse condemnation is "a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted." *United States* v. *Clarke,* 445 U.S. 253, 257, 100 S. Ct. 1127, 63 L. Ed. 2d 373 (1980).

[2] The complaint also named as a defendant the town of Stratford, the town where the property in question is located. The plaintiff, however, withdrew his claim against Stratford during oral argument before the trial court. Therefore, defendant refers solely to the city of Bridgeport.

[3] The complaint also alleged that the defendant's actions violated the plaintiff's civil rights under the United States constitution and 42 U.S.C. § 1983. The plaintiff, however, abandoned this claim during oral argument before the trial court.

[4] The complaint alleged that the defendant "engaged in a wilful course of conduct . . . by bringing meritless claims against the Plaintiff and, upon information and belief, misrepresented facts to the Courts in order to deprive

The trial court granted summary judgment for the defendant. The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

Although the parties have stipulated to the relevant facts, the history of this case is nevertheless a complex one that spans more than twenty years. In late 1972, the plaintiff negotiated to purchase property in Stratford that was zoned for commercial use. The property in question is located east of and adjacent to Sikorsky Memorial Airport, which is owned and operated by the defendant but located wholly within the town of Stratford. See *Powers* v. *Ulichny,* 185 Conn. 145, 146, 440 A.2d 885 (1981) (*Ulichny I*).

Before purchasing the property, the plaintiff sought special approval from the Stratford planning and zoning commission (zoning commission) to construct 100 units of residential housing on the commercial site. The defendant objected to the petition, arguing that the housing complex would obstruct the airport in general and runway number 11-29 in particular. The defendant also expressed concern that families moving into the housing might find the airport to be a nuisance or health hazard. The zoning commission, however, approved the plaintiff's request in December, 1972. The plaintiff then purchased the property for $205,000. He did not, however, construct the approved housing at that time.

[the] Plaintiff of the use of his property and in order to use the Plaintiff's property for its own business purposes."

In addition, the trial court read the complaint as alleging a taking by reason of the defendant wrongfully allowing planes to fly over the plaintiff's property. The plaintiff, however, abandoned this second line of argument during oral argument before this court. Therefore, only his zoning appeals claim remains.

In 1977, the plaintiff altered and added to his plans for the property. Pursuant to the original commercial zoning of the property, he opened a restaurant on the northern side of the parcel. He also petitioned the zoning commission for permission to build the earlier approved housing units in six buildings, rather than three or four buildings. Although the defendant again contested the plan, the zoning commission approved the plaintiff's request.

The defendant, however, continued to challenge the plaintiff's plans for his property by appealing the zoning commission's approval of the six building housing development to the Superior Court. The court eventually sustained the appeal, overturning the zoning commission's decision.

In the wake of the trial court's decision, the plaintiff returned to the zoning commission. This time he sought to construct the housing in three buildings. The defendant again contested the petition, and the zoning commission again approved it. For a second time, the defendant appealed the zoning commission's decision to the Superior Court.

While the defendant's appeal on the housing development was pending, the plaintiff attempted to add a second floor to his restaurant. The state commissioner of transportation brought an action in Superior Court seeking to enjoin the construction on the ground that it would constitute an airport hazard. *Ulichny I,* supra, 185 Conn. 146. The city of Bridgeport intervened as a plaintiff and was granted a permanent injunction; id., 146–47; this court, however, reversed that decision. We held that the issuance of a permanent injunction would constitute "the functional equivalent" of a taking of a property interest under General Statutes § 15-73,[5]

---

[5] General Statutes § 15-73 provides in relevant part: "Where necessary in order to provide unobstructed air space for the landing and taking-off

part of the aeronautics laws, and therefore the city was required to utilize the strict taking procedures set out in General Statutes § 13b-43.[6] Id., 155–56.

In April, 1982, the plaintiff and the defendant appeared to have reached a settlement. The plaintiff agreed to sell the restaurant portion of the property to the defendant. In return, the defendant agreed to pay him $660,000 and to withdraw its appeal of the second zoning commission decision regarding the housing development.

In 1985, however, the plaintiff brought this action, contending that the actions of the defendant from 1977 to 1982 had constituted a taking "by reason of the Defendant's interference with [the] Plaintiff's power of disposition over his property, a substitution of the Defendant's dominion and control over the property of the Plaintiff, and a substantial interference with the Plaintiff's property rights . . . ." The plaintiff, relying principally on our interpretation in *Ulichny I* of §§ 15-73 and 13b-43, contended that the conduct of the defendant between 1977 and 1982 was the "functional equivalent" of a temporary taking. The plaintiff claimed that the defendant's actions had depressed the value of his land, created severe financial stress for him,

of aircraft, in case of airports, heliports and restricted landing areas acquired or operated by the state, the commissioner, and, in case of municipal airports, the municipality, *is granted authority to acquire, in the same manner as is provided for the acquisition of property for airport purposes, easements through or other interests in air space over land or water, interests in airport hazards outside the boundaries of the airports, heliports or restricted landing areas, and such other airport protection privileges as are necessary to insure safe approaches . . . ."* (Emphasis added.)

[6] General Statutes § 13b-43 sets out detailed procedures that a municipality must follow in order to take property for the establishment, maintenance, expansion, or improvement of its airport. For example, the municipality must provide just compensation to the owner of the property; in cases where the land to be acquired lies outside the boundaries of the municipality which owns the airport, the town in which the land is located must also approve the taking.

deterred potential investors in or purchasers of the property for any fair and reasonable price, and caused him to lose profits that would have accrued for nearly five years.

Reading the plaintiff's allegations as stating a cause of action for abuse of process,[7] the trial court rendered summary judgment for the defendant, finding that there was no evidence that the defendant had undertaken any of its actions with an intent to misuse or abuse legal process.[8] The trial court therefore did not reach the question of a taking under the aeronautics laws.

On appeal, the plaintiff urges us to ignore "the abuse of process red-herring,"[9] and instead to consider whether the defendant's "simple expedient of a zoning appeal"[10] is the "functional equivalent" of a tak-

---

[7] In its memorandum of decision, the trial court wrote that the "[p]laintiff claims that the city 'took' his property by abusing legal process . . . ."

[8] As this court stated in *Mozzochi* v. *Beck,* 204 Conn. 490, 494, 529 A.2d 171 (1987), an abuse of process action "lies against any person using 'a legal process against another in an improper manner or to accomplish a purpose for which it was not designed.' " The abuse occurs "through the employment of process for a wrongful and malicious purpose to attain an unjustifiable end or an object that the particular process was not meant to effect." 1 F. Harper, F. James & O. Gray, Torts (2d Ed. 1986) § 4.9. In other words, the action focuses on "the use of 'a legal process . . . against another *primarily* to accomplish a purpose for which it is not designed.' " (Emphasis added.) *Mozzochi* v. *Beck,* supra, 494, quoting 3 Restatement (Second), Torts § 682 (1977).

[9] The plaintiff himself, however, must bear some blame for this red herring. In his brief, he argues that the trial court "transmuted Appellant's claim into one for abuse of process." A few paragraphs later, however, he states that "[a]s a matter of law, however, the City did abuse the process of the Court . . . ." His brief is fairly read, however, as arguing that the defendant's conduct constitutes the functional equivalent of a taking under the aeronautics laws, and not an abuse of process.

[10] The trial court examined several facets of the zoning appeals individually, including the defendant's very acts of taking the appeals, an alleged misstatement made by the defendant during the first appeal, and the defendant's withdrawal of the second appeal as a condition of its $660,000 settle-

ing under §§ 15-73 and 13b-43 and our earlier case involving the same parties, *Ulichny I,* supra, 185 Conn. 145.

In *Ulichny I,* supra, 185 Conn. 151, we noted that state aeronautics laws grant municipalities the power of eminent domain "to acquire interests in airport hazards to ensure the safe and efficient operation of an airport." See General Statutes § 15-73. In order to exercise this right, however, the city must comply with detailed statutory "taking" procedures and safeguards set out in § 13b-43. *Ulichny I,* supra, 185 Conn. 150–51. This court held that the permanent injunction sought by the city was the "functional equivalent of acquiring an interest in the hazard." Id., 155–56. Because the city had failed to comply with the statutory requirements for acquiring such an interest—including the payment of just compensation to the owner of the interest—a permanent injunction could not be issued.

The plaintiff today asks us to extend our holding in *Ulichny I* by finding that the acts of the defendant between 1977 and 1982 constituted a temporary "taking" and that the plaintiff therefore is entitled to compensation. This we decline to do.

We begin our analysis by noting that we are *not* called upon in this case to interpret a "taking" under either the federal or state constitutions. First, the plaintiff has not argued that a constitutional taking occurred.[11] Second, analyzing a taking under the aeronautics laws

ment with the plaintiff. In his brief to this court, the plaintiff relies only on the claimed impropriety of "zoning appeals," and we treat this case accordingly.

[11] The plaintiff has neither cited nor mentioned the federal or state constitutions in his brief. In a somewhat vaguely worded allegation in his complaint, the plaintiff did claim that the defendant had violated not only the aeronautics laws but also "the mandates of the Connecticut Courts." We do not, however, read this six word allegation as stating a claim of constitutional dimension.

does not call into question our constitutional takings jurisprudence as explicated in such cases as *Tamm* v. *Burns,* 222 Conn. 280, 284, 610 A.2d 590 (1992), *Wright* v. *Shugrue,* 178 Conn. 710, 713, 425 A.2d 549 (1979), and *Laurel, Inc.* v. *State,* 169 Conn. 195, 201, 362 A.2d 1383 (1975). As this court noted in *Ulichny I,* supra, 185 Conn. 151 n.5, §§ 15-73 and 13b-43 "set forth a scheme requiring compensation *whether or not* the acts of the state or municipality amount to a constitutional 'taking.' " (Emphasis added.) Thus, a state or municipality may be held to have violated the takings provisions of §§ 15-73 and 13b-43 even though its acts do not rise to the level of an unconstitutional inverse condemnation.

In *Ulichny I,* supra, 185 Conn. 155, we expressly noted that it was the permanency of the relief sought by the city that made its actions the "functional equivalent of acquiring an interest" under the aeronautics laws. We reasoned that although a permanent injunction against a neighboring landowner would constitute such an interest; id.; a mere temporary injunction would not. Id., 156 n.8. This is so because, although a temporary injunction simply maintains the status quo while the rights of the parties are being determined; *Olcott* v. *Pendleton,* 128 Conn. 292, 295, 22 A.2d 633 (1941); a permanent injunction effects a final determination of these rights.

In this case, the plaintiff has failed to prove that the defendant acquired the "functional equivalent of . . . an interest" in his property. *Ulichny I,* supra, 185 Conn. 155. On the contrary, the plaintiff bases his claim solely on the acts of the defendant in appealing two zoning decisions favorable to the plaintiff to the Superior Court over a five year period.[12] The defendant won its first

---

[12] Connecticut zoning law explicitly allows a person to appeal a planning and zoning decision if the person is "aggrieved." General Statutes § 8-8 (a). The plaintiff does not argue that the defendant was not aggrieved within the meaning of the statute.

appeal, and withdrew its second appeal only as a condition of a contract entered into with the plaintiff. Such an exercise of legal rights does not qualify as a "taking" under the permanent harm test of *Ulichny I.* Appeals of administrative decisions are, by their very nature, of finite duration. Moreover, they do not conclusively determine the parties' rights to the parcel itself. Neither the zoning appeals nor the court's reversal of the first decision gave the defendant a permanent right to prevent the plaintiff from further developing his land or from proposing new building projects that might be erected thereon. This was made abundantly clear after the first appeal, when the plaintiff returned to the zoning commission with a new plan to develop housing on the same site. We hold, therefore, that the plaintiff has failed to prove a taking under §§ 15-73 and 13b-43.

The judgment of the trial court is affirmed.

In this opinion the other justices concurred.