## MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY *v.* RICHARD BLUMENTHAL, ATTORNEY GENERAL
### (SC 17602)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

---

Argued November 29, 2006—officially released April 3, 2007

*Ross H. Garber*, with whom were *Vaughan Finn* and, on the brief, *Shana-Tara Regon*, for the appellant (plaintiff).

*Gregory T. D'Auria*, assistant attorney general, with whom were *Robert Clark*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, and *Susan Quinn Cobb*, assistant attorney general, for the appellee (defendant).

*William S. Fish, Jr.*, with whom was *Paul Guggina*, for the appellees (intervening defendants The Hartford Courant Company and Diane Levick).

*Dennis F. Kerrigan, Jr.*, and *Michael Menapace* filed a brief for the Connecticut Business and Industry Association, Inc., as amicus curiae.

*Eric V. Turner* filed a brief for the freedom of information commission as amicus curiae.

*Opinion*

BORDEN, J. The plaintiff, Massachusetts Mutual Life Insurance Company, appeals[1] from the judgment of the trial court dissolving the ex parte temporary restraining order that had been granted to the plaintiff and denying the plaintiff's application for a temporary injunction. The plaintiff claims that: (1) the trial court's judgment dissolving the temporary restraining order and denying the plaintiff's application for a temporary injunction is a final judgment for purposes of appeal; and (2) the trial court improperly concluded that certain internal investigatory reports, which the plaintiff had provided to the defendant, Attorney General Richard Blumenthal,

---

[1] The plaintiff appealed to the Appellate Court from the judgment of the trial court. We subsequently transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

were not protected from disclosure under the confidentiality provision of General Statutes § 35-42.[2] We con-

---

[2] General Statutes § 35-42 provides: "(a) Whenever the Attorney General, his deputy, or any assistant attorney general designated by the Attorney General, has reason to believe that any person has violated any of the provisions of this chapter, he may, prior to instituting any action or proceeding against such person, issue in writing and cause to be served upon any person, by subpoena duces tecum, a demand requiring such person to submit to him documentary material relevant to the scope of the alleged violation.

"(b) Such demand shall (1) state the nature of the alleged violation, and (2) describe the class or classes of documentary material to be reproduced thereunder with such definiteness and certainty as to be accurately identified, and (3) prescribe a date which would allow a reasonable time to assemble such documents for compliance.

"(c) All documents furnished to the Attorney General, his deputy, or any assistant attorney general designated by the Attorney General, shall be held in the custody of the Attorney General, or his designee, shall not be available to the public, and shall be returned to the person at the termination of the attorney general's investigation or final determination of any action or proceeding commenced thereunder.

"(d) No such demand shall require the submission of any documentary material, the contents of which would be privileged, or precluded from disclosure if demanded in a grand jury investigation.

"(e) The Attorney General, his deputy, or any assistant attorney general designated by the Attorney General, may during the course of an investigation of any violations of the provisions of this chapter by any person (1) issue in writing and cause to be served upon any person, by subpoena, a demand that such person appear before him and give testimony as to any matters relevant to the scope of the alleged violations. Such appearance shall be under oath and a written transcript made of the same, a copy of which shall be furnished to said person appearing, and shall not be available for public disclosure; and (2) issue written interrogatories prescribing a return date which would allow a reasonable time to respond, which responses shall be under oath and shall not be available for public disclosure.

"(f) In the event any person shall fail to comply with the provisions of this section, (1) the Attorney General, his deputy, or any assistant attorney general designated by the Attorney General, may apply to the superior court for the judicial district of Hartford for compliance, which court may, upon notice to such person, issue an order requiring such compliance, which shall be served upon such person; (2) the Attorney General, his deputy, or any assistant attorney general designated by the Attorney General, may also apply to the superior court for the judicial district of Hartford for an order, which court may, after notice to such person and hearing thereon, issue an order requiring the payment of civil penalties to the state in an amount not to exceed five hundred dollars.

"(g) The Attorney General shall cooperate with officials of the federal government and the several states, including but not limited to the sharing

clude that the trial court's judgment was not an appealable final judgment. Consequently, because we lack subject matter jurisdiction, we dismiss the plaintiff's appeal.

On July 22, 2005, the plaintiff instituted this action by filing a verified complaint and an application for an ex parte temporary restraining order enjoining the defendant from disclosing to the intervenors, The Hartford Courant Company (Courant) and Diane Levick, a Courant reporter, two internal investigative reports compiled by the plaintiff and provided to the defendant. The plaintiff also sought a temporary injunction and an order to show cause why a temporary injunction should not issue. The trial court granted the ex parte temporary restraining order and issued the order to show cause on the same day. Following a hearing, the court dissolved the temporary restraining order and denied the plaintiff's application for a temporary injunction. The plaintiff appealed from the rulings, and the trial court subsequently granted the plaintiff's motion for stay pending appeal.

The record reveals the following undisputed relevant facts and procedure. On November 2, 2004, the defendant served the plaintiff with a subpoena and interrogatories in connection with his investigation of possible violations of provisions of the Connecticut Antitrust Act, pursuant to General Statutes § 35-42 (a). The plaintiff subsequently produced documents in response to the subpoena. In March, 2005, Assistant Attorney Gen-

and disclosure of information and evidence obtained under the purview of this chapter.

"(h) Service of subpoenas ad testificandum, subpoenas duces tecum, notices of deposition, and written interrogatories, as provided herein, may be made by: (1) Personal service or service at the usual place of abode; or (2) by registered or certified mail, return receipt requested, a duly executed copy thereof addressed to the person to be served at his principal place of business in this state, or, if said person has no principal place of business in this state, to his principal office, or to his residence."

eral Matthew Budzik contacted the plaintiff to request documents that were not the subject of the subpoena. Subsequently, in June, 2005, Budzik again contacted the plaintiff, inquiring whether the plaintiff's internal investigation that had resulted in the termination of its former chief executive officer, Robert O'Connell, included any information relevant to the defendant's investigation of the insurance industry. The plaintiff responded that the investigation of O'Connell was unrelated to the defendant's insurance investigation. Upon learning of the existence of the investigative reports, Budzik nevertheless requested that the plaintiff provide copies of the reports to the defendant. The plaintiff complied, requesting that the reports be accorded confidential treatment. Soon thereafter, the Courant and Levick submitted a request to the defendant, pursuant to the Freedom of Information Act (act), General Statutes § 1-200 et seq., seeking a copy of the plaintiff's investigative reports. After reviewing the request, the defendant concluded that the reports were not exempt from mandatory disclosure under General Statutes § 1-210 (a),[3] and, accordingly, determined to make the reports public. The defendant informed the plaintiff of his decision on July 21, 2005.

The following day, the plaintiff instituted this action, and the trial court granted the ex parte temporary restraining order on the same day. Subsequently, the court granted a motion to intervene in the action filed by the Courant and Levick. Following the hearing on the plaintiff's application for a temporary injunction and the order to show cause why a temporary injunction should not issue, the trial court rejected all of the plaintiff's arguments that the reports were exempt from disclosure under the act, including the plaintiff's claim

---

[3] General Statutes § 1-210 (a) mandates disclosure to the public of all records kept or maintained by a public agency, "[e]xcept as otherwise provided by any federal law or state statute . . . ."

that the reports were protected by the confidentiality provision of § 35-42 (c). See footnote 2 of this opinion. Accordingly, the court dissolved the ex parte temporary restraining order and denied the plaintiff's application for a temporary injunction. This appeal followed.

The plaintiff claims that the trial court's judgment dissolving the ex parte temporary restraining order and denying the plaintiff's application for a temporary injunction is an appealable final judgment. We disagree.

It is well established that the statutory right to appeal is limited to appeals by aggrieved parties from final judgments. General Statutes § 52-263. Moreover, this court consistently has stated that, in the absence of a statutory provision to the contrary,[4] a denial or grant of a temporary injunction does not constitute a final judgment for purposes of appeal. *Doublewal Corp.* v. *Toffolon*, 195 Conn. 384, 388, 488 A.2d 444 (1985); *Board of Education* v. *Shelton Education Assn.*, 173 Conn. 81, 88, 376 A.2d 1080 (1977); *Olcott* v. *Pendleton*, 128 Conn. 292, 295, 22 A.2d 633 (1941). This is so because the purpose of a temporary injunction is to "[maintain] the status quo while the rights of the parties are being determined." *Ulichny* v. *Bridgeport*, 230 Conn. 140, 147, 644 A.2d 347 (1994). Similarly, the denial of a temporary injunction is a determination that the status quo need not be maintained while the court determines the rights of the parties. By contrast, "a permanent injunction effects a final determination of [those] rights." Id. Under this well established law, therefore, the denial by the court of the plaintiff's application for a temporary injunction was merely an interlocutory order and is not a final judgment for purposes of appeal.[5]

---

[4] The plaintiff does not claim that any such statutory provision applies in the present case.

[5] The plaintiff could have sought a permanent injunction, in which case the denial thereof would have been an appealable final judgment. *Cheryl Terry Enterprises, Ltd.* v. *Hartford*, 262 Conn. 240, 247, 811 A.2d 1272 (2002). Similarly, if the plaintiff determined that it had no further evidence to submit, it could have requested that the court make its denial of the

Despite this deeply rooted jurisprudence, the plaintiff contends that the trial court's order is appealable under the second prong of *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). This contention fails.

"In both criminal and civil cases . . . we have determined certain interlocutory orders and rulings of the Superior Court to be final judgments for purposes of appeal. An otherwise interlocutory order is appealable in two circumstances: (1) [when] the order or action terminates a separate and distinct proceeding, [and] (2) [when] the order or action so concludes the rights of the parties that further proceedings cannot affect them." Id.

"The second prong of the *Curcio* test focuses on the nature of the right involved. It requires the parties seeking to appeal to establish that the trial court's order threatens the preservation of a right already secured to them and that that right will be irretrievably lost and the [parties] irreparably harmed unless they may immediately appeal. . . . Thus, a bald assertion that the [plaintiff] will be irreparably harmed if appellate review is delayed until final adjudication . . . is insufficient to make an otherwise interlocutory order a final judgment. One must make at least a colorable claim that some recognized statutory or constitutional right is at risk." (Citation omitted; internal quotation marks omitted.) *Chadha* v. *Charlotte Hungerford Hospital*, 272 Conn. 776, 785–86, 865 A.2d 1163 (2005). Put another way, "the [appellant] must do more than show that the trial court's decision threatens him with irreparable harm. The [appellant] must show that that decision threatens to abrogate a right that he or she then holds." (Internal quotation marks omitted.) *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, 279 Conn. 220, 226, 901 A.2d 1164 (2006).

temporary injunction permanent, which would have been a final judgment for purposes of appeal. The plaintiff did not, however, invoke either of these procedures.

The plaintiff asserts that it has the right, pursuant to § 35-42 (c), to have the investigative reports remain confidential. The defendant had determined, however, that the reports were not exempt from disclosure pursuant to § 1-210 (a) of the act. Thus, the question of whether the plaintiff was entitled to have the reports remain confidential was the subject of the present action, the very issue that the plaintiff sought to have the court determine. The plaintiff has not, therefore, satisfied its appellate burden of showing that the right to confidentiality in the reports is one that it already has. Compare, e.g., *Tappin* v. *Homecomings Financial Network, Inc.*, 265 Conn. 741, 752, 830 A.2d 711 (2003) (trial court's denial of plaintiff tenant's motion to enjoin ejectment was final judgment under second prong of *Curcio* because "[a]t the time of the hearing on her motion to enjoin the ejectment, the plaintiff had a right to possession of the property with her family pursuant to a valid lease").

In support of its contention that the trial court's denial of the temporary injunction constitutes a final judgment under the second prong of *Curcio*, the plaintiff relies on its claim that it will suffer irreparable harm by the disclosure of the investigative reports. We previously have stated, however, that a party seeking appeal of an interlocutory order under the second prong of *Curcio* "must do more than show that the trial court's decision threatens [it] with irreparable harm. The [plaintiff] must show that that decision threatens to abrogate a right that [it] then holds." (Internal quotation marks omitted.) *Waterbury Teachers Assn.* v. *Freedom of Information Commission*, 230 Conn. 441, 448, 645 A.2d 978 (1994). Indeed, *Waterbury Teachers Assn.* supports the conclusion that the order in the present case is not an appealable final judgment under the second prong of *Curcio*.

In *Waterbury Teachers Assn.*, the plaintiff teachers association had conducted grievance hearings without

opening the hearings to the public. Several parties, including the Waterbury Republican American newspaper and two of its employees, filed a complaint to the defendant freedom of information commission (commission), claiming that they had been excluded illegally from the hearings. Id., 443. The commission agreed and ordered that the plaintiff grant the public access to subsequent hearings. Id., 445. On appeal of the commission's decision to the trial court, the plaintiff sought a stay of the commission's order pending the resolution of the appeal. Id., 445–46. The trial court, treating the motion for stay as an application for a temporary injunction, denied the motion. Id., 446. This court affirmed the decision of the Appellate Court dismissing the appeal for lack of a final judgment, despite the plaintiff's claim that, once it was required to hold hearings publicly, the loss of privacy rights would result in irreparable harm. Id., 447. We first summarized the well established principle that "[f]or an interlocutory order to be an appealable final judgment it must threaten the preservation of a right that the [party] already holds. The right itself must exist independently of the order from which the appeal is taken. Where a decision has the effect of not granting a particular right, that decision, even if erroneous, does not threaten the [party's] already existing rights." (Internal quotation marks omitted.) Id., 448–49. We then noted that this result was consistent with our prior case law concluding that the threatened loss of privacy rights was insufficient to render an interlocutory order a final judgment for purposes of appeal. Id., 449. In particular, we noted that, in *Melia* v. *Hartford Fire Ins. Co.*, 202 Conn. 252, 254, 520 A.2d 605 (1987), we concluded that "a trial court order of disclosure and production was not a final judgment for purposes of appeal, despite the defendant's claim that the material ordered to be produced was protected by the attorney-client privilege and the work

product doctrine, and that the order therefore fell within the second prong of *Curcio.*" *Waterbury Teachers Assn.* v. *Freedom of Information Commission,* supra, 230 Conn. 449. Thus, as in *Waterbury Teachers Assn.,* in which the plaintiff's claimed loss of privacy in its grievance hearings because of their accessibility under the act did not make the court's denial of a temporary injunction appealable under *Curcio,* in the present case, the plaintiff's claimed loss of confidentiality in its reports because of disclosure under the act did not render the court's denial of a temporary injunction appealable under *Curcio.*

The plaintiff contends that the present case is distinguishable from *Waterbury Teachers Assn.* for two reasons. First, the plaintiff argues that, unlike the claim of the plaintiff in *Waterbury Teachers Assn.* that it had a right to have the grievance hearings conducted in private, the alleged right to confidentiality in the investigative reports that the plaintiff claims, in the present case, exists independently from the requested temporary injunction because it is a right based on the confidentiality provision of § 35-42 (c). We disagree that the two cases are distinguishable on this basis. The plaintiff in *Waterbury Teachers Assn.* asserted that its right to have the grievance hearings held outside the presence of the public was based on General Statutes (Rev. to 1991) § 1-18a (b).[6] The plaintiff claimed that, because

[6] General Statutes (Rev. to 1991) § 1-18a (b), now § 1-200 (2), provides in relevant part: " 'Meeting' means any hearing or other proceeding of a public agency, any convening or assembly of a quorum of a multimember public agency, and any communication by or to a quorum of a multimember public agency, whether in person or by means of electronic equipment, to discuss or act upon a matter over which the public agency has supervision, control, jurisdiction or advisory power. 'Meeting' shall not include: Any meeting of a personnel search committee for executive level employment candidates; any chance meeting, or a social meeting neither planned nor intended for the purpose of discussing matters relating to official business; strategy or negotiations with respect to collective bargaining; a caucus of members of a single political party notwithstanding that such members also constitute a quorum of a public agency; an administrative or staff meeting of a single-

the grievance hearings constituted "strategy or negotiations with respect to collective bargaining" within the meaning of § 1-18a (b), the hearings were not "meetings" subject to disclosure under the act. Therefore, in that case, just as in the present case, the plaintiff relied on a statutory provision to assert that it had a right to keep something from public scrutiny—in that case, meetings, in this case, reports. In that case, just as in the present case, the plaintiff's entitlement to the asserted right was dependent, at least temporarily, upon obtaining the relief that was denied in the interlocutory order. Thus, in both cases, the plaintiff's right to preserve the items from disclosure did not exist independently of an order denying the requested relief.

Second, the plaintiff claims that the present case is distinguishable from *Waterbury Teachers Assn.* because the loss of privacy rights in the present case would be permanent, rather than temporary, as in *Waterbury Teachers Assn.* The fact, however, that the denial of the stay in *Waterbury Teachers Assn.* resulted in grievance hearings becoming public only until the appeal resolved the final merits of the case, as opposed to the present case, in which the reports need be disclosed only once in order for the plaintiff to lose entirely any confidentiality in the reports, is due merely to the fact that grievance hearings are independent procedures that occur on a continuing basis, whereas reports are documents that, once disclosed, lose any cloak of confidentiality permanently. That distinction may signify that the harm suffered by the plaintiff in the present case is *more* irreparable than the compelled presence of the public at grievance hearings pending the results of an appeal. The distinction has no bearing, however, on the plaintiff's burden to establish that it already holds the right to have the reports remain confidential.

member public agency; and communication limited to notice of meetings of any public agency or the agendas thereof. . . ."

Finally, the plaintiff contends that public policy reasons support its claim that the denial of the temporary injunction in the present case should be determined to be a final judgment for purposes of appeal. Specifically, the plaintiff argues that the confidentiality provision of the antitrust act is intended to encourage the subjects of investigations to cooperate with the defendant's office, and that this court should conclude, therefore, that the denial of a temporary injunction seeking to enforce the confidentiality provision should be considered a final judgment for purposes of appeal in order to encourage such cooperation, and to avoid a chilling effect should an appeal not be available upon the denial of an application for a temporary injunction seeking, pursuant to the confidentiality provision, to prevent disclosure. The plaintiff's argument fails to account for the procedure that it could have, but did not, employ in the present case. See footnote 5 of this opinion. Namely, as we have noted, the plaintiff could have, but elected not to, seek a permanent injunction, the denial of which *would* have constituted a final judgment for purposes of appeal. See *Ulichny* v. *Bridgeport*, supra, 230 Conn. 147. The plaintiff's public policy argument, therefore, is unpersuasive.

The appeal is dismissed.

In this opinion the other justices concurred.