TOWN OF BOZRAH ET AL. *v.* ANNE D.
CHMURYNSKI ET AL.
(SC 18424)
(SC 18354)
(SC 18355)
(SC 18356)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan, Eveleigh and Harper, Js.

Argued October 17, 2011—officially released February 14, 2012

Richard S. Cody, with whom, on the brief, were Jon B. Chase and Adrienne Maciulewski, for the appellants and the plaintiffs in error (Anne D. Chmurynski et al.).

Russell N. Jarem, with whom, on the brief, were Dana B. Lee and Michael C. Conroy, for the appellees and the defendants in error (town of Bozrah et al.).

Christopher J. Smith and Beth Bryan Critton filed a brief for the Connecticut Chapter of the American Planning Association et al. as amici curiae.

*Opinion*

McLACHLAN, J. In this consolidated appeal, we must balance the public interest in allowing municipalities to inspect residential property for zoning violations against the individual's constitutional right to be free from unreasonable searches. The defendants appeal[1]

---

[1] The defendants, Anne D. Chmurynski and Walter Chmurynski, appealed from the order of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2. Subsequently, the plaintiffs in error, Michael Chmurynski, Dale Bishop and Laura Alligood, each brought a writ of error to this court, and we consolidated the appeal and the three writs of error. For simplicity, we

from the temporary injunction granted by the trial court requiring them to allow the plaintiffs, the town of Bozrah (town) and Thomas Weber, the town's zoning enforcement officer, to inspect their property for zoning violations. The defendants claim that the trial court's order violates their right to be free from unreasonable searches and seizures. We agree with the defendants, and, accordingly, reverse the order of the trial court.[2]

The record discloses the following facts and procedural history, either as found by the trial court or undis-

refer to Anne Chmurynski, Walter Chmurynski, Michael Chmurynski, Bishop and Alligood collectively as the defendants.

[2] The defendants advance the following additional arguments in this consolidated appeal. First, the defendants argue that if we construe General Statutes § 8-12 to authorize zoning officials to inspect private property for zoning violations without a warrant issued upon a showing of probable cause pursuant to General Statutes § 54-33a, we must conclude that § 8-12 is unconstitutional under the fourth amendment to the United States constitution and article first, § 7, of the Connecticut constitution. Second, the defendants argue that the extension of the injunction to the "agents" of Anne Chmurynski and Walter Chmurynski, that is, to Michael Chmurynski, Dale Bishop and Laura Alligood, violates the right of cotenants to withhold their consent to a search of the property without a warrant. Third, the defendants contend that §§ 2.20 and 10.4 of the Bozrah zoning regulations are unconstitutionally vague. Fourth, the defendants claim that the trial court abused its discretion in concluding that the plaintiffs' had established that they were entitled to injunctive relief. Fifth, the defendants assert that the plaintiffs are barred from equitable relief under the doctrine of unclean hands.

Because we resolve this appeal in the defendants' favor on the ground that the trial court's order violated the fourth amendment, we need not reach the foregoing claims. We do address, however, the defendants' collateral estoppel claim to the extent that we find that the claim lacks merit. "Collateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action." *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 296, 596 A.2d 414 (1991). A prior case involving Anne Chmurynski and the town zoning board of appeals, concerned a request to search the property for dogs in conjunction with a cease and desist order issued by the town zoning enforcement officer. *Chmurynski* v. *Zoning Board of Appeals*, Superior Court, judicial district of New London, Docket No. CV-84-007132 (July 16, 1996). There is no identity of issues with the present action, which involves a search of the property for unregistered cars pursuant to a court-issued injunction. Accordingly, the trial court properly determined that collateral estoppel did not bar the court's consideration of the present action.

puted. In August, 2007, Weber received an e-mail from the town's first selectman, stating: " 'Please do an inspection of 135 Scott Hill Road for unregistered motor vehicles and other junk.' " Weber traveled to 135 Scott Hill Road (property), where the five defendants reside. As Weber testified, he intended to inspect the property for "junk," including unregistered cars, in violation of §§ 2.20 and 10.4 of the Bozrah zoning regulations.

Upon Weber's arrival at the property, he first encountered Dale Bishop. Bishop referred him to Michael Chmurynski, who expressly refused to consent to an inspection of the property. Michael Chmurynski instructed Weber to seek an inspection through the town attorney. Although Weber did not search the property during this visit, he did observe approximately six vehicles by the driveway. He testified that the vehicles did not appear to be in disrepair and that they had license plates, but he was unable to determine from his vantage point whether the plates contained a valid registration date.

After a discussion with the town attorney, Weber returned to the property on September 1, 2007. Again, Michael Chmurynski refused to let Weber inspect the property. Sometime after the second meeting, a fence was erected on the property, preventing Weber from viewing certain portions of the property from the street. The plaintiffs then brought the present action seeking a temporary and permanent injunction to enjoin Anne D. Chmurynski and Walter Chmurynski, as owners and residents of the property,[3] from refusing to consent to an inspection of the property.

Following a hearing on the plaintiffs' request for a temporary injunction, the trial court issued a memoran-

[3] The complaint refers to Anne Chmurynski and Walter Chmurynski as owners of the property. Michael Chmurynski, however, testified that Anne Chmurynski is the sole owner.

dum of decision, authorizing Weber to inspect the property and ordering the defendants to "desist and refrain from interfering with or hindering in any way the [zoning enforcement officer] in the conduct of his inspection." The court observed that state and local zoning regulations authorize a zoning enforcement officer to inspect and remedy any zoning violations. Further, the trial court stated that the only way a zoning enforcement officer can execute these duties when a property owner has refused to consent to a search is to conduct an inspection of the property pursuant to a judicial order. Although General Statutes § 54-33c (a), the statute that sets forth the procedure for applying for search warrants, does not appear to apply outside the criminal context, the court found that the apparent lack of an adequate remedy at law buttressed its equitable power to issue an injunction to effect the same result as a warrant. Recognizing that an inspection pursuant to such an injunction must comply with the fourth amendment to the United States constitution, the court cited the United States Supreme Court's decision in *Camara* v. *Municipal Court*, 387 U.S. 523, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967), for the proposition that inspections in nonemergency circumstances are reasonable within the meaning of the fourth amendment when a reasonable governmental interest in such a search exists. The court then concluded that the reasonable governmental interest in stabilizing property values and promoting the general welfare justified an inspection in the present action, and granted the temporary injunction preventing the defendants from refusing to allow the inspection. The defendants subsequently moved for a stay of execution, which the trial court granted. This consolidated appeal followed.

Preliminarily, we observe that the order being appealed is labeled a temporary injunction. As a general rule, a decision either granting or denying a temporary

injunction is not a final judgment and, therefore, is not immediately appealable. *Massachusetts Mutual Life Ins. Co.* v. *Blumenthal*, 281 Conn. 805, 811, 917 A.2d 951 (2007). In substance, however, the trial court's order functioned as a permanent injunction. The purpose of a temporary injunction is to "[maintain] the status quo while the rights of the parties are being determined," while "a permanent injunction effects a final determination of [those] rights." (Internal quotation marks omitted.) Id. In the present case, the order was not issued as a temporary measure until the court could permanently determine the rights of the parties. Instead, the court made a final determination that the town could search the property over the objection of the defendants. Therefore, notwithstanding the trial court's characterization of its order as a temporary injunction, we view the order as an appealable final judgment.

The defendants claim that the trial court's order authorizing the zoning inspection of their property violates their fourth amendment right to be free from unreasonable searches and seizures. Specifically, the defendants claim that, before conducting an inspection of their property, the plaintiffs were required to obtain a warrant supported by a finding of probable cause. Because the defendants' claim presents a question of law, our review is plenary. *State* v. *Brown*, 299 Conn. 640, 650, 11 A.3d 663 (2011). In order for us to resolve this issue, we must consider whether the trial court properly concluded that: (1) the reasonableness requirement of the fourth amendment applies to zoning inspections; (2) that requirement is satisfied if the government can demonstrate that the search furthers a reasonable governmental interest; and (3) the proper procedural vehicle by which to determine whether such an inspection should be authorized is by seeking a court-ordered injunction. When, as here, the proposed search is not part of a periodic or area inspection program,

we conclude that the reasonableness requirement of the fourth amendment applies and is satisfied when a judicial officer orders a search upon a showing by municipal authorities that probable cause exists to believe that a zoning violation will be discovered upon inspection of the premises. We further conclude that an injunction is an appropriate procedural vehicle through which a municipality may seek judicial authorization to conduct a zoning inspection. Because the trial court did not apply the correct standard in making its finding of probable cause, we reverse the trial court's judgment.

We first turn to the relevance of the fourth amendment to zoning inspections under General Statutes § 8-12, which authorizes a zoning official "to cause any building, structure, place or premises to be inspected and examined and to order in writing the remedying of any condition found to exist therein or thereon in violation of any provision of the regulations made under authority of the provisions of this chapter . . . ."[4] The

---

[4] The defendants claim that the trial court's order also violates article first, § 7, of the Connecticut constitution, which provides that "[t]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation." It is well established that "[f]ederal law, whether based upon statute or constitution, establishes a minimum national standard for the exercise of individual rights and does not inhibit state governments from affording higher levels of protection for such rights." *Cologne* v. *Westfarms Associates*, 192 Conn. 48, 57, 469 A.2d 1201 (1984). Although the defendants briefly discuss the six factors this court considers to determine the contours of state constitutional provisions; *State* v. *Geisler*, 222 Conn. 672, 684, 610 A.2d 1225 (1992); the defendants do not argue that article first, § 7, of the Connecticut constitution affords greater protection than the fourth amendment in this context. Moreover, we conclude that the procedure followed in the present action failed to ensure even the minimum standard of protection. Therefore, we need not decide here whether an individual subject to an inspection for zoning violations should be afforded greater protection under the state constitution than under the federal constitution, and we limit our review of the parties' claims to the federal constitution. See *State* v. *Batts*, 281 Conn. 682, 690 n.6, 916 A.2d 788, cert. denied, 552 U.S. 1048, 128 S. Ct. 667, 169 L. Ed. 2d 524 (2007).

fourth amendment to the United States constitution, which is made applicable to the states through the fourteenth amendment; see *Mapp* v. *Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961); provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV. "A 'search' for purposes of the [f]ourth [a]mendment occurs when a reasonable expectation of privacy is infringed." *Segura* v. *United States*, 468 U.S. 796, 820, 104 S. Ct. 3380, 82 L. Ed. 2d 599 (1984). Although "the [f]ourth [a]mendment protects people, not places"; *Katz* v. *United States*, 389 U.S. 347, 351, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967); the United States Supreme Court has recognized that the "curtilage area immediately surrounding a private house has long been given protection as a place where the occupants have a reasonable and legitimate expectation of privacy that society is prepared to accept." *Dow Chemical Co.* v. *United States*, 476 U.S. 227, 235, 106 S. Ct. 1819, 90 L. Ed. 2d 226 (1986); see also *State* v. *Ryder*, 301 Conn. 810, 822, 23 A.3d 694 (2011).

The primary purpose of the fourth amendment is to "safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara* v. *Municipal Court*, supra, 387 U.S. 528. In *Camara*, the United States Supreme Court held that the fourth amendment applies to searches and seizures in the civil as well as the criminal context. Id., 534; see also *Marshall* v. *Barlow's, Inc.*, 436 U.S. 307, 312, 98 S. Ct. 1816, 56 L. Ed. 2d 305 (1978). Rejecting the notion that an individual's fourth amendment protections are "merely 'peripheral' " in the context of a regulatory inspection, the Supreme Court stated, "[i]t is surely

anomalous to say that the individual and his private property are fully protected by the [f]ourth [a]mendment only when the individual is suspected of criminal behavior." *Camara* v. *Municipal Court,* supra, 530. Therefore, administrative searches of residences must comply with the fourth amendment. Id., 534.

In the present case, the parties do not dispute that *Camara* compels the conclusion that a zoning inspection pursuant to § 8-12 of areas in which an individual has a reasonable expectation of privacy is a "search" within the meaning of the fourth amendment. Further, it is undisputed that once the defendants built a fence around their property, the area within the confines of the fence comprised the curtilage of the home. Because the trial court's order permitted inspection of the curtilage, the proposed inspection is a search subject to the protections of the fourth amendment.

A conclusion that the fourth amendment applies merely begins our inquiry, however, for in order to determine whether the investigation in fact violated the fourth amendment, we must review whether the proposed search would be "unreasonable . . . ."[5] U.S. Const., amend. IV. It is well established that "a search conducted without a warrant issued upon probable cause is per se unreasonable . . . subject only to a few specifically established and well-delineated excep-

---

[5] The defendants argue that § 8-12 is unconstitutional on its face if it provides substantive authority to conduct a search outside the warrant scheme. This court will "indulge in every presumption in favor of the statute's constitutionality . . . and, when called upon to interpret a statute, we will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent." (Citation omitted; internal quotation marks omitted.) *State* v. *Floyd,* 217 Conn. 73, 79, 584 A.2d 1157 (1991). Accordingly, we interpret the language in § 8-12 that permits an official "to cause" a search to authorize that official to take enforcement action through available methods at law. We do not interpret § 8-12 to authorize the designated official to circumvent the requirements of the fourth amendment.

tions." (Internal quotation marks omitted.) *State* v. *Ryder*, supra, 301 Conn. 825; see, e.g., *Chimel* v. *California*, 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969) (upholding warrantless search incident to arrest for weapons or evidence in immediate area); *Warden* v. *Hayden*, 387 U.S. 294, 298–99, 87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967) (upholding warrantless search in exigent circumstances). Thus, although a warrant and probable cause finding are presumptively mandatory, we keep in mind that "the ultimate touchstone of the [f]ourth [a]mendment is 'reasonableness' . . . ." *Brigham City* v. *Stuart*, 547 U.S. 398, 403, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006).

Traditionally, probable cause requires some showing of individualized suspicion beyond mere "common rumor or report, suspicion, or even 'strong reason to suspect' . . . ." *Henry* v. *United States*, 361 U.S. 98, 101, 80 S. Ct. 168, 4 L. Ed. 2d 134 (1959). For instance, in the criminal context, a judicial officer may issue a warrant upon a finding of "probable cause to believe that a crime has been committed and that the items sought are likely to be found at the place specified in the warrant." *State* v. *Browne*, 291 Conn. 720, 750, 970 A.2d 81 (2009). Anything less than a finding that "the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate . . . would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches . . . . And simple good faith on the part of the arresting officer is not enough. . . . If subjective good faith alone were the test, the protections of the [f]ourth [a]mendment would evaporate, and the people would be secure in their persons, houses, papers, and effects, only in the discretion of the police." (Citations omitted; internal quotation marks omitted.)

*Terry* v. *Ohio*, 392 U.S. 1, 21–22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

In the administrative context, on the other hand, the Supreme Court held in *Camara* v. *Municipal Court*, supra, 387 U.S. 538–39, that inspections that are part of a general administrative plan for the enforcement of a statutory scheme are reasonable within the meaning of the fourth amendment if "reasonable legislative or administrative standards for conducting an *area* inspection" demonstrate "a valid public interest." (Emphasis added.) Particularized suspicion for choosing an individual residence within the area searched is unnecessary. Id., 536, 538. In other words, probable cause to inspect a particular location may be based on a showing that the premises was chosen pursuant to a general administrative plan for the enforcement of a statute derived from neutral sources. *Marshall* v. *Barlow's, Inc.*, supra, 436 U.S. 320–21.

In the present action, the trial court noted that decisional authority on the precise showing of probable cause required to justify the proposed search is largely absent. The court nevertheless concluded that *Camara*'s relaxed showing of " 'a valid public interest' " for area searches was controlling in this case. We disagree. In determining what showing of probable cause is required, we follow the approach applied in *Camara* of "balancing the need to search against the invasion which the search entails." *Camara* v. *Municipal Court*, supra, 387 U.S. 537. Here, as in *Camara*, we consider: (1) the type of search proposed; id., 538–39; (2) the nature of the premises to be searched; id., 530–31; and (3) the public policies on which the government relies to justify the search. Id., 537.

First, key among the Supreme Court's considerations in *Camara* in arriving at its diluted probable cause standard for administrative searches was the type of

search contemplated. In that case, the search at issue was a *routine* inspection of an *area*. See id., 526, 536; id., 530, 538 ("routine inspection of the physical condition of private property"; "routine inspection"; "area inspection"); see also *See* v. *Seattle*, 387 U.S. 541, 87 S. Ct. 1737, 18 L. Ed. 2d 943 (1967) ("routine, periodic city-wide canvass"). Indeed, the search sought in *Camara* consisted of a routine inspection pursuant to a municipal code provision that required the city housing inspector to inspect for violations " 'at least once a year . . . .' " *Camara* v. *Municipal Court*, supra, 387 U.S. 526 n.1. The fact that the impetus for the search consisted of neutral statutory guidelines "based upon legislative or administrative assessment of broad factors such as the area's age and condition"; id., 532; ensured that the subsequent search was general and impersonal. Id., 537. Measuring the privacy interest at stake against the character of the search, the Supreme Court concluded in *Camara* that the risk of harm to an individual's privacy was low "because the inspections are neither personal in nature nor aimed at the discovery of evidence of crime . . . ." Id. This reasoning indicates that the relaxed showing of probable cause was limited to routine and area wide inspections and does not necessarily extend to *all* administrative searches, including those prompted by individual complaints singling out a particular dwelling.

The type of search contemplated in the present action differs from the type of search considered in *Camara*. The search contemplated here is not in conformance with any general routine or area inspection scheme. Rather, the proposed search targets a single dwelling as the object of suspicion in response to a complaint regarding that property. In this sense, the proposed search of the property looking for specific zoning violations more closely resembles a search for specific evidence of a crime in a criminal investigation. Without a

requirement of probable cause to believe that the search of the targeted property will uncover evidence of a specific administrative violation, the risk that a particular dwelling has been singled out arbitrarily as the object of suspicion remains high. Indeed, adopting the probable cause standard of *Camara* as urged by the plaintiffs would be contrary to the justifications behind the fourth amendment probable cause requirement because it would authorize, in effect, suspicionless searches of individual homes. Presuming that all statutes and regulations embody a valid public interest, so long as an officer could point to a potentially relevant statute or regulation, the officer would have sufficient justification to intrude on the privacy of any home at any time, thereby leaving citizens at the mercy of an officer's unbridled discretion.

Second, *Camara* and the decisions that follow it review the privacy interest at stake in relation to the nature of the premises to be searched. In *Camara*, as well as the present case, the proposed search targeted residential property. In *Camara*, the Supreme Court observed that "even the most law-abiding citizen has a very tangible interest in limiting the circumstances under which the sanctity of his home may be broken by official authority, for the possibility of criminal entry under the guise of official sanction is a serious threat to personal and family security." Id., 530–31; see also *See* v. *Seattle*, supra, 387 U.S. 543 ("[t]he businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property"). In contrast, the Supreme Court has found that "[b]ecause the owner or operator of commercial premises in a 'closely regulated' industry has a reduced expectation of privacy, the warrant and probable-cause requirements, which fulfill the traditional [f]ourth [a]mendment standard of reasonableness for a govern-

ment search . . . have lessened application [in searches of pervasively regulated businesses]." (Citation omitted.) *New York* v. *Burger*, 482 U.S. 691, 702, 107 S. Ct. 2636, 96 L. Ed. 2d 601 (1987); see *Colonnade Catering Corp.* v. *United States*, 397 U.S. 72, 77, 90 S. Ct. 774, 25 L. Ed. 2d 60 (1970) (government inspector need not obtain warrant to search business engaged in sale of liquor); see also *United States* v. *Biswell*, 406 U.S. 311, 317, 92 S. Ct. 1593, 32 L. Ed. 2d 87 (1972) (upholding warrantless search of business engaged in sale of firearms). In other words, inspections of closely regulated businesses are presumptively reasonable due to the nature of the activity conducted on the premises. These cases, however, represent limited exceptions to the traditional requirements of the fourth amendment and have not been extended outside of inspections of commercial premises engaged in certain types of business. *Marshall* v. *Barlow's, Inc.*, supra, 436 U.S. 312–13. These cases do not contradict the principle that "[n]owhere are expectations of privacy greater than in the home . . . [as] physical entry of the home is the chief evil against which the wording of the [f]ourth [a]mendment is directed." (Internal quotation marks omitted.) *Segura* v. *United States*, supra, 468 U.S. 820. Thus, the privacy interest at stake is at its peak when a search of the home, or its curtilage, for zoning violations is contemplated.

Finally, the foregoing privacy interests must be weighed against the municipality's interest in searching residential property for administrative violations. "[An] agency's particular demand for access will . . . be measured, in terms of probable cause to issue a warrant, against a flexible standard of reasonableness that takes into account the public need for effective enforcement of the particular regulation involved." *See* v. *Seattle,* supra, 387 U.S. 545. In *Camara,* the Supreme Court observed that "the public interest demands that all dan-

gerous conditions be prevented or abated . . . ." *Camara* v. *Municipal Court*, supra, 387 U.S. 537. Finding that area inspections were necessary to accomplish this goal, the Supreme Court reasoned that such searches were reasonable.[6] Id., 537–38.

With respect to zoning inspections, a municipality has an interest in adopting and enforcing zoning ordinances to "promote health and the general welfare . . . ." General Statutes § 8-2 (a). In addition, the plaintiffs have asserted that municipalities have an interest in protecting property values and ensuring conformity with zoning regulations. Although we recognize that these interests are legitimate and perhaps as important as the interests at stake in *Camara*, they are one factor among several in our consideration. Taking into account the three factors we have considered, the key distinction between the zoning inspection at issue presently and the inspection contemplated in *Camara*, in our view, is the targeted nature of the search. When a zoning inspection is aimed at a particular property, we find that the government's interest does not sufficiently outweigh the threat to individual privacy to warrant suspension of the fourth amendment requirement of particularized suspicion.

---

[6] In limited circumstances, the United States Supreme Court also has held that "[a] search unsupported by probable cause can be constitutional . . . when special needs [of the government], beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." (Internal quotation marks omitted.) *Vernonia School District 47J* v. *Acton*, 515 U.S. 646, 653, 661, 115 S. Ct. 2386, 132 L. Ed. 2d 564 (1995); id., 657–65 (upholding drug testing of student athletes because state's interest in preventing drug addiction among students outweighed invasion of privacy); see also *Skinner* v. *Railway Labor Executives' Assn.*, 489 U.S. 602, 621, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989) (upholding drug and alcohol testing of railway employees because government interest in ensuring safety of traveling public justified privacy intrusion). The parties have not argued that the zoning context presents an additional instance of "special needs," nor do we discern any reason for so concluding.

We recognize that a traditional standard of probable cause presents a higher burden for municipal authorities to meet than the *Camara* showing, and, consequently, that the stricter standard may hinder municipal officials in achieving compliance. We do not believe, however, that a preliminary showing of probable cause to believe a zoning violation will be discovered would create an undue burden on local governments, especially since, as the amici[7] note, most homeowners consent to inspection. See also *Marshall* v. *Barlow's, Inc.*, supra, 436 U.S. 316 (observing that great majority of business owners consent to inspection without warrant); *Camara* v. *Municipal Court*, supra, 387 U.S. 539 (observing that most citizens consent to inspections of property without warrant). Furthermore, in certain cases, the complaint itself may contain sufficient information to establish reason to believe that a zoning violation or threatened violation exists on a particular property.

In summary, we conclude that the traditional showing of individualized suspicion best fulfills the purposes of the fourth amendment. We believe a targeted administrative search demands a more particularized showing of probable cause than the relaxed version in *Camara* in order to properly "safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges" while simultaneously providing "fair leeway for enforcing the law in the community's protection." *Brinegar* v. *United States*, 338 U.S. 160, 176, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949). We hold that before a court may issue an order permitting a zoning enforcement officer to enter and search a particular property, there must be a preliminary showing of facts within the knowledge of the zoning officer and of which

[7] We granted the requests of the Connecticut Chapter of the American Planning Association and the Connecticut Association of Zoning Enforcement Officials to appear as amicus curiae and to submit briefs.

that officer has reasonably trustworthy information that are sufficient to cause a reasonable person to believe that conditions constituting a violation of the zoning ordinances are present on the subject property. Because the trial court in the present action did not apply the proper standard in issuing its order, the judgment of the trial court must be reversed.[8]

Turning next to the presumption that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the [f]ourth [a]mendment . . . subject only to a few specifically established and well-delineated exceptions"; *Katz* v. *United States*, supra, 389 U.S. 357; we observe that neither party contends that any of the well established exceptions to the warrant requirement applies to the proposed inspection. Instead, we are presented with the question of whether the trial court's order was the functional equivalent of a warrant, such that the resulting search would be reasonable nevertheless. We conclude that it is.

First, an order authorizing a search and enjoining an individual from interfering with or hindering a search functions as a search warrant. The result in both cases is the same: once a judicial officer sanctions a search, the property owner's right to withhold consent to the search disappears. Additionally, the burden of proof is the same under either procedural vehicle: as we find in this opinion, probable cause is necessary to justify any § 8-12 search for zoning violations that targets a single residence.

Furthermore, although a party seeking an injunction must normally prove: (1) lack of an adequate remedy

---

[8] If the court had reviewed the evidence for proof of probable cause under the proper standard, we do not believe that the mere fact that six vehicles, none of which appeared to be in disrepair, were parked on the property of a home where five adults resided provides sufficient reason to suspect a violation of the Bozrah zoning regulations.

at law; (2) irreparable harm without an injunction; (3) a likelihood of success on the merits; and (4) a favorable balancing of the equities; *Aqleh* v. *Cadlerock Joint Venture II, L.P.*, 299 Conn. 84, 97, 10 A.3d 498 (2010); once a judicial officer finds that probable cause exists, these requirements become superfluous.[9] A showing of probable cause, in effect, demonstrates irreparable harm and a favorable balancing of the equities. For instance, if probable cause were shown and the injunctive relief were nevertheless denied, the municipality would be unable to enforce its zoning ordinances in spite of sufficient evidence that a zoning violation or threatened violation existed on a particular property. Additionally, a finding of probable cause assumes that there is a reasonable likelihood that the municipality will prevail on the merits. Finally, when a proposed search does not assert the existence of criminal violations, a zoning officer always lacks an alternative remedy at law. As the trial court found, "there are no statutory or regulatory provisions for the issuance of search warrants to facilitate regulatory searches" because General Statutes § 54-33a does not appear to contemplate the issuance of civil warrants.[10] Indeed, § 54-33a (b) authorizes the issuance of a search warrant upon a showing of "probable cause to believe that any property (1) possessed, controlled, designed or intended for use or which is or has been used or which may be used as the means

---

[9] As already mentioned in this opinion, we view the trial court's order to function as a permanent injunction, even though the plaintiffs utilized the expedited procedure for a temporary injunction. Unlike a temporary injunction, a permanent injunction does not require a showing of the likelihood of success on the merits. *Lydall, Inc.* v. *Ruschmeyer*, 282 Conn. 209, 236, 919 A.2d 421 (2007).

[10] Additionally, § 54-33a (c) does not authorize the issuance of a warrant to a zoning officer, as that statute provides in relevant part that a warrant "shall be directed to any police officer of a regularly organized police department or any state police officer, to an inspector in the Division of Criminal Justice or to a conservation officer, special conservation officer or patrolman acting pursuant to section 26-6. . . ."

of committing any criminal offense . . . or (3) which constitutes evidence of an offense" exists in the area to be searched. Therefore, if a search for zoning violations does not anticipate the discovery of evidence of a criminal offense, § 54-33a does not appear to apply and no other alternative remedy exists.[11] In sum, like a search warrant, a judicial officer may grant an injunction upon proof of probable cause in this context.

Second, an injunction issued upon a finding of probable cause adequately serves the purposes of the warrant requirement. The warrant requirement embodies two basic protections guaranteed by the fourth amendment. *New York* v. *Burger,* supra, 482 U.S. 703; *Skinner* v. *Railway Labor Executives' Assn.,* 489 U.S. 602, 621–22, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989). It "protect[s] privacy interests by assuring citizens subject to a search or seizure that such intrusions are not the random or arbitrary acts of government agents. A warrant assures the citizen that the intrusion is authorized by law, and that it is narrowly limited in its objectives and scope." *Skinner* v. *Railway Labor Executives' Assn.,* supra, 621–22. It also "provides the detached scrutiny of a

---

[11] There may be circumstances in which a zoning officer may involve the criminal justice system in enforcing zoning regulations. For instance, § 8-12 makes available upon conviction criminal sanctions of up to ten days imprisonment for each day a zoning violation continues "if the offense is wilful . . . ." Furthermore, § 8-12 expressly contemplates simultaneous criminal and civil proceedings, as it delineates the circumstances under which a defendant in a criminal prosecution brought under § 8-12 may plead in abatement on the ground that the zoning violation at issue is the subject of a pending civil action. Because, however, the complaint in the present action does not allege that the suspected violation was wilful and does not specifically seek criminal remedies, the availability of a warrant to search for evidence of zoning offenses pursuant to § 54-33a is not before us. We therefore express no opinion on the appropriate procedure for conducting inspections for zoning violations in cases in which a prosecutor would be authorized to act pursuant to § 54-33a. Furthermore, whether a statutory procedure akin to § 54-33a should be enacted to authorize ex parte judicial orders in the circumstances presented by this case is an issue appropriately addressed by the General Assembly, rather than this court.

neutral magistrate, and thus ensures an objective determination whether an intrusion is justified in any given case." Id., 622. "The scheme of the [f]ourth [a]mendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances." *Terry* v. *Ohio*, supra, 392 U.S. 21.

An injunction hearing in which a preliminary finding of probable cause is made performs both of these functions. For instance, the order granting the injunction informs the property owner that the inspection is authorized by law, that the search is limited to the discovery of particular things, and that the search is limited to certain times and places. The order likewise limits the government official's discretion by defining the scope of his authority. The injunction process further protects against arbitrary invasion by interposing the objective review of a neutral judicial authority. In fact, it is difficult to see what additional procedural protection the warrant requirement would provide an individual because an injunction hearing offers greater safeguards. While a warrant hearing may occur ex parte, an injunction hearing is an adversary proceeding that affords both parties the opportunity to be heard.[12] Additionally, while a judicial officer may issue a warrant solely on the basis of sworn affidavits provided by the complainant, an injunction hearing allows both parties to present evidence.

We recognize that the heightened protection to an individual corresponds to increased difficulty on the

---

[12] Because the present action concerns only the propriety of an injunction to search for zoning violations, we express no opinion on whether an *ex parte* judicial order may be employed to conduct a search in the absence of statutory authority.

government official's part in seeking to obtain permission to search. Although an adversary proceeding may cause more delay to a zoning officer than an ex parte warrant hearing would, we observe that the conditions that constitute zoning violations are, in general, continuing conditions, thereby rendering an immediate ex parte hearing unnecessary. Moreover, the availability of a civil remedy such as an injunction decreases the burden on the criminal docket with respect to zoning cases in which the threat of criminal sanctions arises only in limited circumstances. See footnote 11 of this opinion. Thus, insofar as the burden of prevailing in a request for an injunction is incrementally higher than the burden of obtaining a warrant, we do not believe that this balance is inappropriate, nor do we believe that the government's ability to inspect for zoning violations and to enforce its regulations will be impeded unduly.

In conclusion, we hold that a zoning official may inspect a single property—not part of a routine or area wide search—pursuant to § 8-12 if the zoning official first obtains an injunction issued upon probable cause by a judicial officer as articulated in this opinion. Because the trial court failed to make a preliminary determination of probable cause to believe that a zoning violation existed on the property, its order permitting a search of the defendants' property violates the fourth amendment.

The judgment is reversed and the case is remanded with direction to render judgment setting aside the injunction.

In this opinion the other justices concurred.