******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## STATE OF CONNECTICUT *v.* DONALD SATURNO
### (SC 19602)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson, Js.*

*Argued April 5—officially released July 19, 2016*

*Lisa J. Steele*, assigned counsel, for the appellant (defendant).

*Robert J. Scheinblum*, senior assistant state's attorney, with whom were *Paul J. Ferencek*, senior assistant state's attorney, and, on the brief, *Richard J. Colangelo*,

*Jr.*, state's attorney, for the appellee (state).

*Opinion*

EVELEIGH, J. The defendant, Donald Saturno, appeals from the judgments of conviction rendered by the trial court following his conditional pleas of nolo contendere, pursuant to General Statutes § 54-94a,[1] to one count of manufacturing a bomb in violation of General Statutes § 53-80a and one count of possession of child pornography in the first degree in violation of General Statutes § 53a-196d (a) (1). The defendant entered these pleas after the trial court's denial of his motion to suppress certain evidence discovered following the execution of an administrative search warrant at his apartment. On appeal, the defendant contends that the trial court improperly denied his motion to suppress because the administrative search warrant was invalid and improperly executed. Specifically, the defendant contends that the administrative search warrant was invalid because it was: (1) issued without authority; (2) not supported by probable cause; and (3) improperly issued during an ex parte proceeding. The defendant further contends that the search was unlawful because excessive force was used during its execution. We disagree with the defendant's claims and, accordingly, affirm the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. The defendant lived in an apartment located in the basement of a building in the city of Stamford (city). That building was zoned and assessed by the city as a two-family residence. After receiving a complaint indicating that the building had several entry doors and three mailboxes, the city's Department of Health and Social Services (health department)[2] attempted to conduct an inspection, but was refused entry by the defendant. After two additional attempts to inspect the building proved unsuccessful, the health department presented an application for an administrative search warrant (application) to a judge of the Superior Court. The application included an affidavit signed by two inspectors from the health department, Marjorie Beauchette and Renford Whynes, stating that they had probable cause to believe that an illegal apartment existed in the building in violation of § 146-34 (A) of the Stamford Code of Ordinances.[3] The application noted, in particular, the possibility of an illegal apartment in the basement. The Superior Court judge reviewed the application in an ex parte proceeding, determined that probable cause existed, and issued the administrative search warrant.

Subsequently, pursuant to the health department's standard policy, Beauchette scheduled a date for the execution of the administrative search warrant by a team comprised of various city officials[4] and two officers from the Stamford Police Department. During the inspection, the city officials observed that the first and second floors of the building contained a total of three

apartments. In addition, the city officials noted numerous health, fire, and safety violations. Because the application alleged the potential existence of an illegal apartment in the basement, and because there was no apparent entrance to the basement from the interior of the building, the city officials searched for an exterior entrance. In the backyard, they discovered a locked, fenced area enclosing a staircase that led to a basement door. One of the police officers used a tool to break the lock on the fence, descended the stairs, and knocked on the basement door.

After a considerable period of time, the defendant opened the basement door and identified himself as the property owner.[5] The police officers informed the defendant about the administrative search warrant and asked him to secure his dogs. The police officers conducted a cursory safety check of the threshold area of the basement and then permitted the city officials to enter the basement while the police officers waited outside. One of the city officials observed what he believed to be a pipe bomb and informed one of the police officers of what he had seen. After inspecting the object, the police officer evacuated the premises and contacted the bomb squad. Upon arrival, the bomb squad X-rayed the object and determined that it did not contain any explosive material, but did include hex nuts and other metallic material consistent with shrapnel. The bomb squad also conducted a protective sweep of the basement and observed items in plain view that were consistent with bomb making.

Consequently, the police officers obtained a criminal search warrant to search the premises for items related to bomb making. Pursuant to this criminal search warrant, the police officers seized the suspected pipe bomb, three computers, and other items related to bomb making. Additionally, a second criminal search warrant was issued to search the hard drives of the seized computers, which resulted in the discovery of child pornography.[6]

The defendant thereafter moved to suppress the seized items on the ground that an administrative search warrant does not authorize the entry of police officers into a private residence and that a criminal search warrant pursuant to General Statutes § 54-33a could not properly issue in this case. Following an evidentiary hearing, the trial court issued a ruling from the bench denying the defendant's motion to suppress. In so ruling, the trial court concluded that the administrative search warrant in the present case satisfied the probable cause standard for a targeted administrative inspection and that the police officers had only a "passive" presence during the execution of the administrative search warrant.

The defendant then entered pleas of nolo contendere to one count of manufacturing a bomb in violation of

§ 53-80a and one count of possession of child pornography in the first degree in violation of § 53a-196d (a) (1), conditioned on his right to appeal the denial of his motion to suppress. See General Statutes § 54-94a. This appeal followed.[7] Additional facts will be set forth as necessary.

At the outset, we set forth the standard of review. "[O]ur standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [When] the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct . . . ." (Internal quotation marks omitted.) *State* v. *Buckland*, 313 Conn. 205, 212, 96 A.3d 1163 (2014), cert. denied,      U.S.     , 135 S. Ct. 992, 190 L. Ed. 2d 837 (2015). In the present case, neither the state nor the defendant challenges the factual findings of the trial court. Our review, therefore, is limited to a determination of whether the trial court's legal conclusions—that the administrative search warrant was properly issued and that the subsequent search was properly executed—were legally and logically correct.

Before addressing the merits of the parties' claims, we begin by setting forth certain constitutional provisions relevant to regulatory inspections conducted pursuant to city ordinances. "The fourth amendment to the United States constitution, which is made applicable to the states through the fourteenth amendment . . . provides that [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. . . . A search for purposes of the [f]ourth [a]mendment occurs when a reasonable expectation of privacy is infringed. . . . In *Camara* [v. *Municipal Court*, 387 U.S. 523, 534, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967)], the United States Supreme Court held that the fourth amendment applies to searches and seizures in the civil as well as the criminal context. . . . Rejecting the notion that an individual's fourth amendment protections are merely peripheral in the context of a regulatory inspection, the Supreme Court stated, [i]t is surely anomalous to say that the individual and his private property are fully protected by the [f]ourth [a]mendment only when the individual is suspected of criminal behavior. . . . Therefore, administrative searches of residences must comply with the fourth amendment."[8] (Citations omitted; internal quotation marks omitted.) *Bozrah* v. *Chmurynski*, 303 Conn. 676, 683–85, 36 A.3d 210 (2012).

I

The defendant first claims that the trial court improperly denied his motion to suppress the evidence that formed the basis for the charges against him because the Superior Court judge who issued the administrative search warrant lacked authority.[9] We disagree. A review of the provisions in chapter 368e of the General Statutes, which governs municipal health authorities, reveals that General Statutes § 19a-220 provides an enforcement mechanism for the health department.

As a preliminary matter, we note that the defendant failed to raise this claim before the trial court. We, therefore, review his claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). "Under *Golding*, a defendant may prevail on an unpreserved claim only if the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Wright*, 319 Conn. 684, 688, 127 A.3d 147 (2015); see *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015) (modifying third prong of *Golding*). Because the record is adequate for review, and the defendant's claim that the issuance of the administrative search warrant without authority violated his right against unreasonable searches and seizures is of constitutional magnitude, our inquiry focuses on whether the violation alleged by the defendant exists and deprived him of a fair trial.

Section 19a-220 provides: "When any person refuses to obey a legal order given by a director of health, health committee or board of health, or endeavors to prevent it from being carried into effect, a judge of the Superior Court may issue *his warrant* to a proper officer or to an indifferent person, therein stating such order and *requiring him to carry it into effect, and such officer or indifferent person shall execute the same.*" (Emphasis added.)

The use of the term "his warrant" necessarily implies that an administrative search warrant was contemplated by the legislature as a means of enforcing public health ordinances. The term "his warrant" is not defined in this statute or related provisions. "In the absence of a definition of terms in the statute itself, [w]e may presume . . . that the legislature intended [a word] to have its ordinary meaning in the English language, as gleaned from the context of its use. . . . Under such circumstances, it is appropriate to look to the common understanding of the term as expressed in a dictionary."

(Internal quotation marks omitted.) *Studer* v. *Studer*, 320 Conn. 483, 488, 131 A.3d 240 (2016).

The term "warrant" is defined with substantial similarity in a number of dictionaries. Webster's Third New International Dictionary (2002) defines "warrant" as, inter alia, "a precept or writ issued by a . . . magistrate authorizing an officer to make an arrest, a seizure, or a search or to do other acts incident to the administration of justice . . . ." See also Merriam Webster's Collegiate Dictionary (11th Ed. 2011) (same). The American Heritage College Dictionary (4th Ed. 2002) similarly defines "warrant" as, inter alia, a "judicial writ authorizing an officer to make a search, seizure, or arrest or to execute a judgment . . . ." Applying the dictionary definition of "warrant" indicates that the legislature intended § 19a-220 to authorize the issuance of an administrative search warrant for suspected violations of local ordinances pertaining to the protection of public health.

The defendant nevertheless claims that § 19a-220 does not authorize an administrative search warrant. The defendant asserts that, unlike General Statutes § 29-305,[10] which the Appellate Court has concluded authorizes the issuance of administrative search warrants for a suspected violation of a municipal fire code, § 19a-220 does not specifically reference a right of inspection or of entry onto private property. See *State* v. *Burke*, 23 Conn. App. 528, 529–32, 582 A.2d 915 (1990) (concluding that General Statutes [Rev. to 1987] § 29-305 was constitutional as applied to inspection for fire code violations conducted by local fire marshal pursuant to administrative search warrant), cert. denied, 218 Conn. 906, 588 A.2d 1383 (1991); see also *Rutka* v. *Meriden*, 145 Conn. App. 202, 211 n.9, 75 A.3d 722 (2013). We are not persuaded.

The promulgation and enforcement of local health ordinances constitute a valid exercise of the state's police power. See *DeMello* v. *Plainville*, 170 Conn. 675, 678–79, 368 A.2d 71 (1976). This court has previously explained that "[t]he abatement of nuisances and the enforcement of the public health code by municipal health officials . . . [is] authorized by [what is now § 19a–220] . . . . The promulgation of public health . . . codes and the regulation and abatement of uses of property and nuisances [that] threaten the health and safety of the general public constitute legitimate subjects for the exercise of the state's police power. This power comprehends a system of internal regulation . . . to enable people to live together in close association, preserving to each his individual rights and privileges but so controlling them that their enjoyment is reasonably consistent with the enjoyment of like rights and privileges by others." (Internal quotation marks omitted.) Id. "The police power regulates the use of property or impairs the rights in property,

because the free exercise of these rights is detrimental to public interest." (Internal quotation marks omitted.) Id., 679.

This court has, therefore, recognized that the promulgation of municipal health and safety ordinances is a proper exercise of the state's police powers. We conclude that § 19a-220 codifies that police power. When read in conjunction with the aforementioned dictionary definitions, § 19a-220 expressly authorizes a judge of the Superior Court to issue an administrative search warrant and requires "a proper officer" or "indifferent person" to "carry" that warrant "into effect" and "execute the same." This explicit grant of authority amounts to a recognition of the state's inherent police power to protect the health and safety of the public and provides an enforcement mechanism for the same.

Contrary to the defendant's contention, the absence of express language concerning a right of inspection or entry does not justify the inference that § 19a-220 does not authorize the issuance of administrative search warrants. In fact, an examination of related statutes reveals that General Statutes § 19a-207[11] authorizes the city to adopt ordinances to promote the health and well-being of the public, so long as those ordinances do not frustrate the achievement of the state's objectives in this field. Pursuant to this authority, the city authorized the health department to inspect residential properties located within the city in order to ensure that they are maintained in accordance with the city's housing code. See Stamford Code of Ordinances, c. 146, art. I, §§ 146-5 and 146-6.[12] Therefore, we conclude that the health department has the statutory authority, pursuant to § 19a-207, to adopt regulations requiring the inspection of residential properties for violations of the city's housing code, and that § 19a-220 provides the means for the enforcement of the health department's inspection orders.

Lastly, the defendant contends that if § 19a-220 applies, the statutory language contemplates the issuance of a restraining order, rather than an administrative search warrant.[13] We disagree.

The defendant's interpretation is contrary to the plain language of § 19a-220. There is nothing in the language of the statute to indicate that the legislature intended to restrict the scope of § 19a-220 to the issuance of restraining orders. Instead, the term "his warrant" supports the conclusion that the legislature intended § 19a-220 to constitute a broad grant of authority to the judges of the Superior Court, a grant that reasonably includes the power to issue administrative search warrants as a means of enforcing local housing ordinances.[14] It seems logical to believe that the legislature intended to authorize city officials to take reasonable steps, such as obtaining an administrative search warrant, to fulfill their inspection obligations under the city's ordinances.

We conclude that the plain language of § 19a-220 authorizes the issuance of an administrative search warrant for suspected violations of local ordinances pertaining to the protection of public health when a property owner or occupant refuses to obey an order of inspection given by the health department.[15]

In the present case, the health department sent two notices of inspection to the listed property owner in accordance with the standards set forth in § 146-5 of the Stamford Code of Ordinances and was refused entry onto the premises on the scheduled inspection dates. Because the property owner and the defendant failed to obey the health department's order of inspection, the trial court had the authority pursuant to General Statutes § 19a-220 to issue an administrative search warrant to carry out the health department's order. Accordingly, we conclude that the defendant has failed to satisfy *Golding*'s third prong and that, therefore, his constitutional claim must fail.

II

The defendant next contends that, even if this court were to conclude that § 19a-220 provides authority for the issuance of an administrative search warrant, the warrant in the present case was invalid because the Superior Court judge that issued it failed to apply the proper legal standard. Specifically, the defendant contends that an application for an administrative search warrant that targets a particular property must satisfy a standard of probable cause "more rigor[ous] than would be applied to a search warrant . . . in a criminal proceeding."[16] We are not persuaded.

This court has previously decided the standard of probable cause that is applicable to administrative inspections that target a particular property. In *Bozrah* v. *Chmurynski*, supra, 303 Conn. 687–88, this court declined to apply the "diluted probable cause standard for administrative searches" set forth in *Camara* v. *Municipal Court*, supra, 387 U.S. 538–39,[17] to a zoning inspection that targeted a single property in response to a complaint regarding that property and adopted the traditional standard of probable cause used in criminal cases. This court explained that *Camara*'s "relaxed showing of probable cause was limited to routine and area wide inspections and does not necessarily extend to *all* administrative searches, including those prompted by individual complaints singling out a particular dwelling." (Emphasis in original.) *Bozrah* v. *Chmurynski*, supra, 688. This court further reasoned that "a targeted administrative search demands a more particularized showing of probable cause than the relaxed version in *Camara* in order to properly safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges while simultaneously providing fair leeway for enforcing the law in the community's protection." (Internal quotation

marks omitted.) Id., 692. Thus, this court held that "before a court may issue an order permitting a zoning enforcement officer to enter and search a particular property, there must be a preliminary showing of facts within the knowledge of the zoning officer and of which that officer has reasonably trustworthy information that are sufficient to cause a reasonable person to believe that conditions constituting a violation of the zoning ordinances are present on the subject property." Id., 692–93.

*Bozrah* clearly controls the standard of probable cause to be applied in the present case. As in *Bozrah*, the inspection in the present case was made in response to a complaint, rather than in the course of a periodic or area inspection program, and it targeted a specific property. The defendant has failed to cite, and our research has not revealed, any legal authority requiring a higher standard of probable cause than that necessary to support a criminal search warrant in the context of administrative searches.

Having concluded that *Bozrah* controls, we turn to the defendant's contention that the health department's application did not contain sufficient facts to support a finding that there was probable cause to believe the building contained more than two apartments. We disagree.

The law regarding probable cause and the standards for upholding the issuance of a search warrant are well settled. "It is well established that a search conducted without a warrant issued upon probable cause is per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." (Internal quotation marks omitted.) Id., 685. "[B]ecause of our constitutional preference for a judicial determination of probable cause, and mindful of the fact that [r]easonable minds may disagree as to whether a particular [set of facts] establishes probable cause . . . we evaluate the information contained in the affidavit in the light most favorable to upholding the issuing judge's probable cause finding. . . . We therefore review the issuance of a warrant with deference to the reasonable inferences that the issuing judge could have and did draw . . . and we will uphold the validity of [the] warrant . . . [if] the affidavit at issue presented a substantial factual basis for the magistrate's conclusion that probable cause existed. . . . Finally, [i]n determining whether the warrant was based [on] probable cause, we may consider only the information that was actually before the issuing judge at the time he or she signed the warrant, and the reasonable inferences to be drawn therefrom."[18] (Citations omitted; internal quotation marks omitted.) *State* v. *Shields*, 308 Conn. 678, 691, 69 A.3d 293 (2013), cert. denied,      U.S.    , 134 S. Ct. 1040, 188 L. Ed. 2d 123 (2014).

"Traditionally, probable cause requires some show-

ing of individualized suspicion beyond mere common rumor or report, suspicion, or even strong reason to suspect . . . . For instance, in the criminal context, a judicial officer may issue a warrant upon a finding of probable cause to believe that a crime has been committed and that the items sought are likely to be found at the place specified in the warrant. . . . Anything less than a finding that the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate . . . would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches . . . . And simple good faith on the part of the arresting officer is not enough. . . . If subjective good faith alone were the test, the protections of the [f]ourth [a]mendment would evaporate, and the people would be secure in their persons, houses, papers, and effects, only in the discretion of the police." (Citations omitted; internal quotation marks omitted.) *Bozrah* v. *Chmurynski*, supra, 303 Conn. 686.

The application in the present contained the following facts, attested to by Beauchette and Whynes. The health department received a complaint alleging that there were several entry doors and three mailboxes on the outside of the building, which was zoned and assessed as a two-family residence. As a result of having received this complaint and having reviewed the city records, the health department believed that the property was being operated in violation of an ordinance prohibiting the operation of a "multiple dwelling" without an operating license. See Stamford Code of Ordinances, c. 146, art. II, § 146-34 (A); see also footnote 3 of this opinion.

Consequently, the health department mailed a notice of inspection to the listed property owner. The notice provided a specific date and time for the inspection and cited to § 146-5 of the Stamford Code of Ordinances, which authorizes the health department to conduct inspections of residential properties to ensure compliance with the city's housing code. On the scheduled inspection date, the defendant refused to permit entry onto the property. The following week, the health department attempted to inspect the property without notice, but was unable to do so. A second notice of inspection was subsequently mailed to the property owner. On the scheduled inspection date, Beauchette and Whynes attempted to inspect the property, but again were unable to do so. While they were at the premises, however, Beauchette and Whynes noted that there were three mailboxes, three entrances, and three separate addresses listed on the building.

Applying the probable cause standard for a targeted administrative inspection, as set forth in *Bozrah*, to the facts of the present case, we conclude that the

application provided a substantial factual basis for a finding that there was probable cause to believe the building was being operated as a "multiple dwelling" in violation of § 146-34 (A) of the Stamford Code of Ordinances. Beauchette and Whynes alleged in the application that they had personally observed three mailboxes, three entrances, and three different address numbers on the building. These facts were "sufficient to cause a reasonable person to believe that conditions constituting a violation" of the city's housing code could be found on the property. *Bozrah* v. *Chmurynski*, supra, 303 Conn. 693. Accordingly, we reject the defendant's claim that there was no probable cause to support the issuance of the administrative search warrant.

## III

The defendant next contends that his rights under article first, § 7, of the Connecticut constitution[19] were violated because the administrative search warrant was improperly issued in an ex parte proceeding. We understand the defendant's claim to be that, although the federal constitution may allow for the issuance of administrative search warrants in ex parte proceedings in certain contexts, the state constitution does not unless there is an emergency or the property owner cannot be located. We disagree.[20]

The defendant's claim requires us to examine the scope of the rights afforded by the Connecticut constitution in comparison to the federal constitution. "It is [well established] that federal constitutional and statutory law establishes a minimum national standard for the exercise of individual rights and does not inhibit state governments from affording higher level of protection for such rights. . . . In determining the contours of the protections provided by our state constitution, we employ a multifactor approach that we first adopted in [*State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992)]. The factors that we consider are (1) the text of the relevant constitutional provisions; (2) related Connecticut precedents; (3) persuasive federal precedents; (4) persuasive precedents of other state courts; (5) historical insights into the intent of [the] constitutional [framers]; and (6) contemporary understandings of applicable economic and sociological norms. . . . In addition, as we previously have noted, these factors may be inextricably interwoven, and not every [such] factor is relevant in all cases." (Citations omitted; internal quotation marks omitted.) *State* v. *Kelly*, 313 Conn. 1, 14–15, 95 A.3d 1081 (2014). The defendant claims that these factors collectively support the conclusion that article first, § 7, affords greater protection than the fourth amendment to the federal constitution, under which an administrative search warrant may be granted during an ex parte proceeding. See *Marshall* v. *Barlow's, Inc.*, 436 U.S. 307, 319–20, 98 S. Ct. 1816, 56 L. Ed. 2d 305 (1978). We address each factor in turn.

As to the first *Geisler* factor, namely, the relevant constitutional text, "this court repeatedly has observed that the language of article first, § 7, of the state constitution closely resembles the language of the fourth amendment to the federal constitution. . . . That linguistic similarity undermines the defendant's contention that the state constitution provides a greater opportunity to challenge the legality of a search than the federal constitution. The similarity denotes a common source and, thus, [supports] a common interpretation of the provisions." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Davis*, 283 Conn. 280, 306–307, 929 A.2d 278 (2007). The defendant does not identify any specific textual differences between article first, § 7, of the Connecticut constitution and the fourth amendment to the federal constitution. Therefore, the first *Geisler* factor does not weigh in favor of the defendant's state constitutional claim.

Turning to the second *Geisler* factor, the decisions of this court and the Appellate Court, we begin by examining *Bozrah* v. *Chmurynski*, supra, 303 Conn. 676, upon which the defendant heavily relies. In *Bozrah*, this court did not directly address the issue of whether an ex parte administrative search was valid because the issue before the court was limited to "the propriety of an injunction to search for zoning violations . . . ." Id., 696 n.12. This court further noted that "whether a statutory procedure akin to § 54-33a should be enacted to authorize ex parte judicial orders in [enforcing zoning regulations] is an issue appropriately addressed by the General Assembly, rather than this court." Id., 695 n.11.

As previously noted in this opinion, this court concluded in *Bozrah* that, because there was no statute authorizing the issuance of search warrants in zoning cases, there was no adequate remedy at law for a city to enforce its zoning ordinances. Id., 694; see also footnote 15 of this opinion. This court explained: "[I]f probable cause were shown and the injunctive relief were nevertheless denied, the municipality would be unable to enforce its zoning ordinances in spite of sufficient evidence that a zoning violation or threatened violation existed on a particular property." *Bozrah* v. *Chmurynski*, supra, 303 Conn. 694. As a result, this court held that the trial court had properly exercised "its equitable power to issue an injunction *to effect the same result as a warrant.*"[21] (Emphasis added.) Id., 681.

In so holding, this court stated that "an injunction issued upon a finding of probable cause adequately serves the purposes of the warrant requirement." Id., 695. "[A]n order authorizing a search and enjoining an individual from interfering with or hindering a search *functions as a search warrant*. The result in both cases is the same: once a judicial officer sanctions a search, the property owner's right to withhold consent to the search disappears. Additionally, the burden of proof is

the same under either procedural vehicle . . . probable cause is necessary to justify any . . . search for zoning violations [pursuant to General Statutes § 8-12] that targets a single residence." (Emphasis added.) Id., 693. Although this court noted that "an injunction hearing offers greater safeguards" than a search warrant because it "is an adversary proceeding that affords both parties the opportunity to be heard," nowhere in our decision did we suggest that an adversarial hearing was *required* prior to the issuance of a judicial order authorizing an administrative search.[22] Id., 696. A reading of *Bozrah*, therefore, makes evident that, had there been statutory authority for the issuance of an ex parte warrant to enforce the zoning inspection in that case, and had the city sought that remedy, the trial court's issuance of an ex parte warrant would have been proper.

The defendant essentially claims that, upon being denied entry onto the property, the health department was required to seek an injunction to enjoin the defendant from refusing to consent to an inspection of the property, as occurred in *Bozrah* v. *Chmurynski*, supra, 303 Conn. 680. He reasons that a request for injunctive relief would provide the property owner or occupant an opportunity to raise defenses and argue as to why an inspection should not be permitted at the injunction hearing prior to the execution of the search. We disagree.

Unlike the situation in *Bozrah*, the present case does not involve an inspection for zoning violations, but rather an inspection for violations of the city's housing code, which is enforced by the health department. See Stamford Code of Ordinances, c. 146, art. II, § 146-34 (A). In this opinion, we have also determined that § 19a-220 authorizes the health department to seek an administrative search warrant in order to enforce city ordinances pertaining to health. See part I of this opinion. Furthermore, as previously explained in this opinion, the Appellate Court has concluded that § 29-305 authorizes the issuance of administrative warrants to search for municipal fire code violations. See *Rutka* v. *Meriden*, supra, 145 Conn. App. 211 n.9; *State* v. *Burke*, supra, 23 Conn. App. 531–32. Thus, we conclude that state precedent does not support the defendant's position in the present case.

In accordance with the third *Geisler* factor, we now examine relevant federal precedents. In *Marshall* v. *Barlow's, Inc.*, supra, 436 U.S. 316–17, the United States Supreme Court emphasized that, in the absence of consent, a federal agency's enforcement of its administrative inspection scheme must proceed within the framework of the fourth amendment warrant procedure. Relying on its prior decision in *Camara*, the Supreme Court held in *Barlow's, Inc.*, that a provision of the federal Occupational Safety and Health Act

(OSHA), 29 U.S.C. § 651 et seq., was unconstitutional "insofar as it purport[ed] to authorize inspections without warrant or its equivalent." *Marshall* v. *Barlow's, Inc.*, supra, 324–25. In so holding, the court indicated that, although it did not exist at the time, a regulation promulgated under OSHA expressly authorizing the issuance of ex parte warrants would be constitutional.[23] See id., 320 n.15 (noting that regulation expressly permitting federal agency to seek ex parte warrant or its equivalent "would appear to be as much within the [federal agency's] power as the regulation currently in force").

Furthermore, several other federal courts have upheld the validity of ex parte administrative search warrants under the federal constitution. For instance, the United States Court of Appeals for the Ninth Circuit has explained as follows: "[I]n [administrative] search warrant cases, a neutral and detached magistrate will have had the opportunity to examine the reasonableness of the proposed search. Such an inquiry focuses on the information in the possession of those seeking the warrant rather than on the actual conduct of the party to be searched. Thus, an adequate inquiry can be conducted without the direct participation of the latter." (Footnote omitted.) *In re Establishment Inspection of Hern Iron Works, Inc.*, 881 F.2d 722, 729 (9th Cir. 1989). Furthermore, the United States Court of Appeals for the Tenth Circuit has stated that *Barlow's, Inc.*, "clearly recognized the power and authority of a federal district court to issue ex parte search or entry orders for federal . . . purposes . . . ." *Matter of Carlson*, 580 F.2d 1365, 1375 (10th Cir. 1978). Finally, the United States District Court for the District of Connecticut has reasoned as follows: "Nothing in [*Barlow's, Inc.*] suggests the impropriety of an ex parte warrant application. Indeed, the implication is to the contrary. . . . [The federal agency] here relies on evidence of an existing violation for which the court has found probable cause. This is sufficient to authorize the warrant and the inspection pursuant to it." (Citation omitted.) *In re Stanley Plating Co.*, 637 F. Supp. 71, 73 (D. Conn. 1986).[24]

As to the fourth *Geisler* factor, our research of sister state precedents reveals that several state courts have held that the fourth amendment does not prohibit the issuance of an administrative search warrant after an ex parte hearing. See, e.g., *In re Inspection of Titan Tire*, 637 N.W.2d 115, 121 (Iowa 2001) (noting that Supreme Court's statement of approval regarding regulation expressly authorizing ex parte administrative warrants to search for OSHA violations in *Barlow's, Inc.*, "meant that [ex parte administrative warrants] passed the reasonableness requirement of the [f]ourth [a]mendment"); *Brooks* v. *Butler*, 70 N.C. App. 681, 688, 321 S.E.2d 440 (1984) (noting that "[e]x parte warrants are authorized by the regulations governing OSHA" and

"have been approved by most federal courts which have considered the question"), appeal dismissed, 313 N.C. 327, 329 S.E.2d 385 (1985); *Seattle* v. *McCready*, 124 Wn. 2d 300, 311, 877 P.2d 686 (1994) (en banc) (rejecting landlords' contention that administrative search warrant was invalid because it was issued ex parte); *Cranwell* v. *Mesec*, 77 Wn. App. 90, 108 n.18, 890 P.2d 491 (rejecting property owner's "contention that administrative search warrants cannot be issued ex parte"), review denied, 127 Wn. 2d 1004, 898 P.2d 308 (1995).

In the present case, the defendant has not cited, and our research has not revealed, a single case in which a court has concluded that a property owner or occupant is constitutionally required to receive notice and an opportunity to be heard in court before judicial authorization for an administrative search may be granted. Accordingly, we are not persuaded that the fourth factor weighs in favor of a determination that article first, § 7, of the Connecticut constitution affords the defendant greater protection than the federal constitution in this context.

As to the fifth *Geisler* factor, concerning "whether the historical circumstances surrounding the adoption of article first, § 7, support the defendant's claim to greater protections under that provision than are afforded by the federal constitution, we have stated that [t]he declaration of rights adopted in 1818 appears to have its antecedents in the Mississippi constitution of 1817, which in turn derived from the federal bill of rights and the Virginia declaration of rights of 1776. . . . The search and seizure provision in our 1818 constitution, then article first, § 8, closely resembles the fourth amendment to the United States constitution. Although its enumeration was changed to article first, § 7, when the 1965 constitution incorporated article first, § 4, into article seventh, its language has not been altered since its original adoption. . . . The language of article first, § 7, which was based upon the fourth amendment, was adopted with little debate. . . . Thus, the circumstances surrounding the adoption of article first, § 7, lend weight to the view that, in most cases, a practice permitted under the fourth amendment is permissible under article first, § 7." (Internal quotation marks omitted.) *State* v. *Williams*, 311 Conn. 626, 634, 88 A.3d 534 (2014). The defendant fails to provide any historical insights into the intent of the framers that support his position. Accordingly, the fifth *Geisler* factor does not support the defendant's claim.

Finally, with respect to the sixth *Geisler* factor, namely, contemporary economic or sociological understandings, the defendant relies upon a treatise authored by a law school professor, Wayne R. LaFave. This treatise comments that *Camara* "could have better protected the right of privacy by permitting the use of administrative warrants enforceable only after giving

the householder an opportunity to be heard in court." 5 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment (5th Ed. 2012) § 10.1 (d), p. 29. The treatise further concludes that "adversary proceedings in advance of inspection can be had without risk to the government interests being pursued." Id., p. 28. For the reasons which follow, however, we are not persuaded by this reasoning and, instead, conclude that the imposition of an adversarial hearing requirement under the circumstances of the present case would be detrimental to the public interest.

First, in *Bozrah* v. *Chmurynski*, supra, 303 Conn. 682, we concluded that "notwithstanding the trial court's characterization of its order as a temporary injunction," the trial court's order that the municipality could search the property over the objection of the defendants was an "appealable final judgment." Appeals from judicial orders enjoining individuals from interfering with an administrative inspection would greatly delay the orderly progress of administrative inspection schemes. Consequently, such a delay would hinder enforcement of municipal ordinances that were enacted for the purpose of protecting the health and welfare of the public.[25]

Second, we disagree with the defendant's characterization of the violation at issue in this case as "a relatively small problem." A violation of this seemingly minor ordinance could lead to harmful results. In the present case, the judge who issued the administrative search warrant determined that there was probable cause to believe that an illegal apartment could be found on the premises. As a result, that judge could have reasonably concluded that the health department would find more serious violations on the property, and issued a warrant that authorized a search for fire safety, housing, and building code violations. For example, the maintenance of illegal apartments may result in the overburdening of the building's electrical system and such apartments are often heated with space heaters and ovens. These practices present serious fire hazards that can lead to significant property damage, injury, and death. See, e.g., *Enis* v. *Ba-Call Building Corp.*, 639 F.2d 359, 363 (7th Cir. 1980) (tenant's practice of boiling water in turkey kettle on kitchen stove to provide heat in unheated apartment led to children's injuries when water from kettle spilled on them). Furthermore, illegal apartments may not have an adequate number of exits or operational smoke detectors, which could result in injurious consequences in the event of an emergency. See, e.g., *Commonwealth* v. *Zhan Tang Huang*, 87 Mass. App. 65, 66, 25 N.E.3d 315 (2015) (man and two small children living in illegal basement apartment that only had one exit and lacked operational smoke detectors died when fire broke out in building). While these situations do not rise to the level of an emergency or exigent circumstances, they demonstrate how delaying an administrative inspec-

tion, when there is probable cause to believe a housing code violation exists on the property, could potentially lead to disastrous results. See *State* v. *Kendrick*, 314 Conn. 212, 226–31, 100 A.3d 821 (2014) (explaining exigent circumstances and emergency exceptions to fourth amendment warrant requirement).

Lastly, we emphasize that, in the present case, the health department sent two notices of inspection to the property owner and attempted to inspect the property on those scheduled dates. The health department also made another attempt to inspect the property without notice and was unable to do so. Thus, this was not a case where the health department, upon receipt of a complaint, resorted immediately to the warrant process. Rather, the health department made reasonable efforts to place the property owner on notice of its need to inspect the property prior to seeking a warrant.[26]

Considering all of the *Geisler* factors, we conclude that the defendant's rights under article first, § 7, of the Connecticut constitution were not violated. Accordingly, we reject this claim.

IV

Lastly, the defendant claims that his rights under the fourth amendment to the United States constitution were violated because one of the police officers accompanying the city officials exercised "excessive force" when he broke the lock on the fence in order to access the basement door.[27] In response, the state contends that the police officer acted reasonably when he broke the lock in order to enable the city officials to enter the basement and conduct their inspection.[28]

Officers executing a valid search warrant are still bound by the fourth amendment standard of reasonableness. See *Dalia* v. *United States*, 441 U.S. 238, 258, 99 S. Ct. 1682, 60 L. Ed. 2d 177 (1979) (stating that "the manner in which a warrant is executed is subject to later judicial review as to its reasonableness"); see also *Trinity Marine Products, Inc.* v. *Chao*, 512 F.3d 198, 202 (5th Cir. 2007) (stating that "administrative warrants, like criminal warrants, can be executed by means of *reasonable* force" [emphasis added]). It is well established that "[e]xcessive or unnecessary destruction of property in the course of a search may violate the [f]ourth [a]mendment . . . ." *United States* v. *Ramirez*, 523 U.S. 65, 71, 118 S. Ct. 992, 140 L. Ed. 2d 191 (1998). The United States Supreme Court has recognized, however, that "officers executing search warrants on occasion must damage property in order to perform their duty." *Dalia* v. *United States*, supra, 258; see also *Richardson* v. *Henderson*, 651 So. 2d 501, 504 (La. App. 1995) ("The destruction of property in carrying out a search is not favored, but it does not necessarily violate the [f]ourth [a]mendment; the standard is reasonableness . . . . Destruction of property that is

not reasonably necessary to effectively execute a search warrant may violate the [f]ourth [a]mendment." [Citations omitted; internal quotation marks omitted.]). In determining whether an officer's actions were reasonable during a particular search, a court must balance "the nature and quality of the intrusion on the individual's [f]ourth [a]mendment interests against the countervailing governmental interests at stake." (Internal quotation marks omitted.) *Graham* v. *Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). We now apply this balancing test to the facts of the present case.

First, as previously noted in this opinion, the city officials had a legitimate interest in inspecting the property to determine whether there were any illegal apartments. See part III of this opinion. In the present case, after making unsuccessful attempts to obtain the property owner's consent to inspect, the health department obtained a valid administrative search warrant supported by adequate probable cause. See part II of this opinion. Evidence adduced at the suppression hearing supports the conclusion that the only way the city officials could determine whether there was an illegal apartment in the basement, as alleged in the application, was to break the lock on the fence enclosing the staircase that led to the basement. During their inspection of the first and second floors of the building, the city officials observed that there was no apparent entrance to the basement from the interior of the building. Consequently, they searched for an exterior entrance to the basement and located the aforementioned fenced area in the backyard. Thus, the police officer had good reason to damage the lock, as this action was necessary to carry out the search effectively.

Second, the intrusion on the defendant's fourth amendment rights was minimal. The police officer here broke a single lock on a fence that enclosed a staircase that led to an exterior entrance to the basement. Once he opened the fence's gate, the police officers then descended the stairs and knocked on the basement door. After knocking, the police officers and the city officials waited a considerable period of time before the defendant opened the door. The police officers informed the defendant about the administrative search warrant and asked him to secure his dogs before they conducted a cursory safety check of the threshold area of the basement. There is no evidence in the record that the police officers or the city officials had a less intrusive means of entering the basement. Accordingly, weighing the purpose of the search—to inspect for conditions that may potentially endanger the inhabitants of the building—against the extent of the property damage—a broken fence lock—we conclude that the manner in which the entry was accomplished was reasonable.

The defendant, nevertheless, contends that the administrative search warrant did not authorize the police officers to use force while accompanying the city officials during the execution of the warrant. We disagree. As the United States Supreme Court has stated, "[n]othing in the language of the [United States constitution] or in this [c]ourt's decisions interpreting that language suggests that . . . search warrants also must include a specification of the precise manner in which they are to be executed. On the contrary, it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant— subject of course to the general [f]ourth [a]mendment protection 'against unreasonable searches and seizures.' " (Footnote omitted.) *Dalia* v. *United States*, supra, 441 U.S. 257.

The defendant's final contention is that the administrative search should have ended when the city officials found an illegal apartment on the upper floors of the building. We are not persuaded. The application requested the authority to search the premises "to positively determine how many units [were] in the dwelling" and specifically alleged that there was a "possible illegal [basement]." Furthermore, it was reasonable for the city officials to believe, upon discovery of an illegal apartment on the upper floors of the building, that there might be an additional apartment in the basement. The defendant fails to cite to any authority, and we know of none, that would support a conclusion that the city officials, upon discovering that there was an illegal apartment in the building, were prohibited from determining the extent of the housing code violation. Accordingly, we conclude that the execution of the administrative search warrant in the present case comported with the fourth amendment's overarching requirement of reasonableness.

Therefore, we conclude that the trial court properly denied the defendant's motion to suppress the evidence seized as a result of the search conducted pursuant to the administrative search warrant.

The judgment is affirmed.

In this opinion ROGERS, C. J., and PALMER, McDONALD, ESPINOSA and ROBINSON, Js., concurred.

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Rogers and Justices Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson. Although Justice Eveleigh was not present when the case was argued before the court, he has read the briefs and appendices, and listened to a recording of the oral argument prior to participating in this decision.

[1] General Statutes § 54-94a provides in relevant part: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress . . . the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion to suppress . . . would be dispositive of the case. The issue to be considered in such an appeal shall be

limited to whether it was proper for the court to have denied the motion to suppress . . . .”

We note that, while the trial court accepted the defendant's pleas of nolo contendere, it did not determine whether its ruling on the defendant's motion to suppress was dispositive of the case as contemplated by § 54-94a. In order to cure this technical defect, this court issued an order, sua sponte, requiring the trial court to consider that issue. The trial court subsequently determined that its ruling on the motion to suppress was dispositive, thereby satisfying the requirements of § 54-94a. See *State* v. *Janulawicz*, 95 Conn. App. 569, 573 n.2, 897 A.2d 689 (2006).

[2] We note that some of the statutes and municipal regulations at issue in the present case refer to the director of the health department. See, e.g., General Statutes § 19a-207. In the interest of simplicity, all references to the health department hereinafter include the director.

[3] Section 146-34 (A) of the Stamford Code of Ordinances provides in relevant part: “No person shall operate a multiple dwelling . . . unless he holds a valid, current, unrevoked operating license issued by the Director of Health . . . .”

“Multiple dwelling” is defined as “[a]ny dwelling containing three . . . or more dwelling units.” Stamford Code of Ordinances, c. 146, art. II, § 146-1 (B). “Dwelling unit” is, in turn, defined as “[a]ny room or group of rooms located within a dwelling and forming a single habitable unit with facilities which are used, arranged or designed to be occupied for living, sleeping, cooking and eating.” Id.

[4] In addition to Beauchette and Whynes, these officials included a land use inspector, a zoning enforcement officer, and an assistant fire marshal. In the interest of simplicity, we hereinafter refer to these individuals collectively as the city officials.

[5] The records of the city assessor indicated that the property was owned by William Hertle Properties, LLC, in the care of Debra Saturno-Galang. Beauchette testified at the suppression hearing that the defendant was one of the lessees of the property at the time of the search.

[6] We note that the validity of the two criminal search warrants is not at issue in this appeal. The question of whether the evidence seized from the defendant's apartment should be suppressed turns solely upon the validity of the administrative search.

[7] The defendant subsequently appealed from the trial court's ruling on his motion to suppress pursuant to § 54-94a, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[8] We note that neither party disputes that the inspection of the defendant's apartment for violations of the city's housing code constitutes a “search” within the meaning of the fourth amendment. Nor does either party contend that any of the well established exceptions to the warrant requirement applies to the inspection at issue in the present case.

[9] The state relies on common-law authority for the issuance of the administrative search warrant and, at oral argument before this court, seemed to concede the absence of statutory authority. We, however, are not bound by this concession. See *LeConche* v. *Elligers*, 215 Conn. 701, 708 n.7, 579 A.2d 1 (1990).

[10] General Statutes § 29-305 provides in relevant part: “(a) Each local fire marshal and the State Fire Marshal, for the purpose of satisfying themselves that all pertinent statutes and regulations are complied with, *may inspect in the interests of public safety* all buildings, facilities, processes, equipment, systems and other areas regulated by the Fire Safety Code and the State Fire Prevention Code within their respective jurisdictions. . . .

“(d) Upon receipt by the local fire marshal of information from an authentic source that any other building or facility within the local fire marshal's jurisdiction is hazardous to life safety from fire, the local fire marshal *shall inspect* such building or facility. In each case in which the local fire marshal conducts an inspection, the local fire marshal shall be satisfied that all pertinent statutes and regulations are complied with, and shall keep a record of such investigations. Such local fire marshal or a designee shall have the right of entry at all reasonable hours into or upon any premises within the local fire marshal's jurisdiction for the performance of the fire marshal's duties except that occupied dwellings and habitations, exclusive of common use passageways and rooms in tenement houses, hotels and rooming houses, may only be entered for inspections between the hours of 9:00 a.m. and 5:00 p.m., except in the event of any emergency requiring immediate attention for life safety, or in the interests of public safety. . . .” (Emphasis added.)

[11] General Statutes § 19a-207 provides in relevant part: “The local director

of health or his authorized agent or the board of health shall enforce or assist in the enforcement of the Public Health Code and such regulations as may be adopted by the Commissioner of Public Health. *Towns, cities and boroughs may retain the power to adopt, by ordinance, sanitary rules and regulations*, but no such rule or regulation shall be inconsistent with the Public Health Code as adopted by said commissioner. . . ." (Emphasis added.) Furthermore, General Statutes § 7-148 (c) (7) (A) (i) authorizes municipalities to "[m]ake rules relating to the maintenance of safe and sanitary housing . . . ."

[12] Section 146-5 of the Stamford Code of Ordinances provides in relevant part: "The Director of Health is hereby authorized and directed to make periodic inspections by and with the consent of the owner, occupant or person in charge, to determine the condition of dwellings . . . located within [the] city, for the purpose of determining compliance with the provisions of this chapter. . . ." Despite the fact that § 146-5 authorizes "periodic inspections," Beauchette testified at the suppression hearing that most of the health department's inspections are conducted in response to a complaint, as was the case here.

Furthermore, although we note that the defendant correctly states that there is no state statute that specifically sets forth the requirements for the issuance of an administrative search warrant, the city, pursuant to its authority under General Statutes § 19a-207, adopted a warrant procedure that carefully limits the health department's inspection authority in time, place, and scope. See Stamford Code of Ordinances, c. 146, art. I, §§ 146-5 and 146-6. The health department, with the consent of the property owner or occupant, is "authorized to enter, examine and survey between the hours of 8:30 a.m. and 4:30 p.m." or at another agreed upon time. Stamford Code of Ordinances, c. 146, art. I, § 146-5. Ordinances further establish a notice procedure whereby the health department is required, whenever practicable, "to provide reasonable advance notice" to the owners or occupants of the residential building. Id. "Such inspection, examination or survey shall not have for its purpose the undue harassment of said owner or occupant, and such inspection, examination or survey shall be made so as to cause the least amount of inconvenience to said owner or occupant, consistent with an efficient performance of the [department's] duties . . . ." Id. If the owner or occupant fails to permit the health department access to the building on the scheduled date for the purpose of conducting an inspection in accordance with the standards set forth in § 146-5 of the Stamford Code of Ordinances, the health department "shall not so enter until [it] presents a duly issued search warrant" particularly describing the place to be searched. Id., § 146-6 (A).

[13] The defendant also contends that an application for a search warrant must set forth the proper statutory authority under which the Superior Court judge may issue the warrant. In making this argument, the defendant highlights the fact that the application in the present case improperly referenced § 54-33a, which authorizes the issuance of criminal search warrants but does not authorize a search warrant for a suspected civil offense. The defendant cites no legal authority and provides no legal analysis in support of this claim and, therefore, we decline to review it. See *Knapp* v. *Knapp*, 270 Conn. 815, 823 n.8, 856 A.2d 358 (2004) ("We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." [Internal quotation marks omitted.]).

[14] We note that this court has previously explained that § 19a-220 authorizes a judge of the Superior Court, upon a showing of probable cause, to issue a warrant for the arrest of an individual who violated an order of the health district to repair a septic system that was leaking raw sewage. See *Brooks* v. *Sweeney*, 299 Conn. 196, 212, 9 A.3d 347 (2010).

[15] We note that this court concluded in *Bozrah* v. *Chmurynski*, supra, 303 Conn. 683, that "an injunction is an appropriate procedural vehicle through which a municipality may seek judicial authorization to conduct a zoning inspection" because there was no adequate remedy at law. This court noted that "if a search for zoning violations [pursuant to General Statutes § 8-12] does not anticipate the discovery of evidence of a criminal offense, § 54-33a does not appear to apply and no other alternative remedy exists." Id., 695. Section 8-12 does not contain language similar to § 19a-220 pertaining

to the issuance of a "warrant." Thus, we conclude that, unlike in the context of zoning inspections pursuant to § 8-12, the health department has an adequate remedy at law to enforce the city's ordinances.

[16] The defendant also claims that the administrative search warrant violated the fourth amendment's "oath or affirmation" requirement because the application was sworn to and signed before a notary public, rather than before the issuing judge. We disagree.

The United States constitution does not "specif[y] a particular procedure for evidencing whether probable cause has been supported by oath or affirmation," but rather "simply require[s] that probable cause, in fact, be so supported." *State* v. *Colon*, 230 Conn. 24, 29, 644 A.2d 877 (1994). Furthermore, the defendant concedes that there is no statutory authority imposing such a requirement in the context of administrative searches. We, thus, conclude that the fourth amendment's "oath or affirmation" requirement was satisfied when Beauchette and Whynes signed the application in the presence of a notary public. See also *United States* v. *Tortorello*, 342 F. Supp. 1029, 1035 (S.D.N.Y. 1972) ("The requirement of an '[o]ath or [a]ffirmation' attesting to the probable cause does not include a requirement that it be administered by or in the presence of the issuing magistrate. . . . The requirement in the law of the oath of a responsible public officer to the showing of the probable cause was to make the affiant legally responsible for any statements of fact relied upon by the [j]udge who issues the warrant. . . . Clearly, this objective is accomplished when the affidavit is sworn to before an office notary public as well as when administered by or in the presence of the magistrate." [Citations omitted.]), aff'd, 480 F.2d 764 (2d Cir.), cert. denied, 414 U.S. 866, 94 S. Ct. 63, 38 L. Ed. 2d 86 (1973).

[17] "[T]he Supreme Court held in *Camara* . . . that inspections that are part of a general administrative plan for the enforcement of a statutory scheme are reasonable within the meaning of the fourth amendment if reasonable legislative or administrative standards for conducting an *area* inspection demonstrate a valid public interest. . . . Particularized suspicion for choosing an individual residence within the area searched is unnecessary. . . . In other words, probable cause to inspect a particular location may be based on a showing that the premises was chosen pursuant to a general administrative plan for the enforcement of a statute derived from neutral sources." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Bozrah* v. *Chmurynski*, supra, 303 Conn. 687.

[18] The defendant contends that the trial court improperly considered evidence beyond that in the application. Our review of the transcript of the trial court's ruling on the defendant's motion reveals that the trial court did not specify what facts it was relying on when it determined the existence of probable cause and there is no indication that the trial court relied on facts outside of the application. Furthermore, it is evident that the trial court was focused upon the issue of the police presence during the execution of the warrant, rather than on the existence of probable cause. We limit our review to the four corners of the application and conclude that it contains sufficient facts to support a finding of probable cause.

[19] Article first, § 7, of the Connecticut constitution provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

[20] The defendant concedes that his claim is unpreserved, but again seeks *Golding* review. See *State* v. *Golding*, supra, 213 Conn. 239–40. Because the record is adequate for review and the defendant's claim is of constitutional magnitude, we agree that the defendant is entitled to review. For the reasons we discuss subsequently in this opinion, however, we conclude that the defendant's claim fails to satisfy the third prong of *Golding* because the alleged constitutional violation does not exist and the record does not establish that the trial court's actions deprived him of a fair trial. Id.

[21] We note that, although this court in *Bozrah* v. *Chmurynski*, supra, 303 Conn. 683, 693, held that "an injunction is an appropriate procedural vehicle through which a municipality may seek judicial authorization to conduct a zoning inspection," it reversed the judgment of the trial court granting the injunction because the trial court did not apply the proper standard of probable cause in issuing its order. See part II of this opinion.

[22] As the defendant highlights in his brief, we stated in *Bozrah* v. *Chmurynski*, supra, 303 Conn. 697, "that the conditions that constitute zoning violations are, in general, continuing conditions, thereby rendering an immediate ex parte hearing unnecessary." This statement merely indicates that the

issuance of an ex parte warrant was not necessary under the circumstances before the court. Contrary to the defendant's contention, it does not suggest that the issuance of an administrative search warrant in an ex parte proceeding would be improper in other contexts.

[23] The court rejected the federal agency's argument that the efficient administration of OSHA would be impeded by the advance notice and delay that would be associated with the imposition of a warrant requirement in cases where an inspector has been denied entry. *Marshall* v. *Barlow's, Inc.*, supra, 436 U.S. 316–20. Notably, the court further stated that it was not "immediately apparent why the advantages of surprise would be lost if, after being refused entry, procedures were available for the [federal agency] to seek an ex parte warrant . . . without further notice to the establishment being inspected." Id., 319–20.

Since the United States Supreme Court's decision in *Barlow's, Inc.*, the regulations promulgated under OSHA have been amended to expressly authorize an ex parte warrant procedure. See 29 C.F.R. § 1903.4 (d) (defining "compulsory process" to mean "the institution of any appropriate action, including ex parte application for an inspection warrant or its equivalent"). The regulation expressly provides that "[e]x parte inspection warrants shall be the preferred form of compulsory process in all circumstances where compulsory process is relied upon to seek entry to a workplace under this section." Id.

[24] The defendant correctly notes that federal cases upholding the issuance of ex parte administrative warrants arise primarily in the context of OSHA inspections. See, e.g., *Trinity Marine Products, Inc.* v. *Chao*, 512 F.3d 198, 208 (5th Cir. 2007); *Donovan* v. *Red Star Marine Services, Inc.*, 739 F.2d 774, 784 (2d Cir. 1984), cert. denied, 470 U.S. 1003, 105 S. Ct. 1355, 84 L. Ed. 2d 377 (1985); *Rockford Drop Forge Co.* v. *Donovan*, 672 F.2d 626, 629 (7th Cir. 1982); *Matter of Keokuk Steel Castings*, 638 F.2d 42, 45 (8th Cir. 1981); *Stoddard Lumber Co.* v. *Marshall*, 627 F.2d 984, 989–90 (9th Cir. 1980). The defendant claims that the present case is distinguishable from those involving OSHA inspections because an OSHA violation could be concealed if the subject of the search received notice. Specifically, the defendant contends that evidence of municipal housing code violations is either of a continuing nature that cannot be concealed or could only be concealed by the desired remedial action, thus rendering an immediate ex parte hearing unnecessary. The defendant asserts, therefore, that the efficiency of inspections for violations of the city's housing code would not be impeded by the imposition of a requirement that an adversarial hearing be conducted in the event a property owner or occupant denies consent.

We consider the situation presented in the present case to be similar in context to cases involving OSHA inspections. In both situations officials are authorized by statute to inspect private property for regulatory violations. Furthermore, we are not persuaded by the defendant's argument distinguishing OSHA violations from city housing code violations. Contrary to the defendant's contention, not all evidence of OSHA violations may be easily concealed. See *Marshall* v. *Barlow's, Inc.*, supra, 436 U.S. 316 (noting that "dangerous conditions outlawed by [OSHA] include structural defects that cannot be quickly hidden or remedied"); see, e.g., 29 C.F.R. §§ 1910.36 (design and construction requirements for exit routes); 29 C.F.R. § 1910.23 (guarding floor and wall openings); 29 C.F.R. §§ 1910.160 (fixed extinguishing systems). Therefore, we find federal cases interpreting the OSHA inspection provisions to be a relevant source of persuasive authority.

[25] We further note that the fact that General Statutes § 51-286b authorizes the initiation of criminal prosecutions for "any . . . municipal housing or health law" bolsters our understanding that § 19a-220 authorizes the issuance of ex parte administrative search warrants to expedite the resolution of such matters. See General Statutes § 51-286b ("[t]he assistant state's attorney or deputy assistant state's attorney assigned to handle housing matters may initiate prosecutions for violations of any state or municipal housing or health law, code or ordinance either upon the affidavit of an individual complainant or upon complaint from a state or municipal agency responsible for the enforcement of any law, code or ordinance concerning housing matters"); see also General Statutes § 47a-68 (6) (defining housing matters as "[a]ll actions involving one or more violations of any state or municipal health, housing, building, electrical, plumbing, fire or sanitation code, including violations occurring in commercial properties, or of any other statute, ordinance or regulation concerned with the health, safety or welfare of any occupant of any housing").

[26] We note that, while there is no evidence that the defendant himself

received notice of the scheduled inspections, the application specifically identified the defendant as the individual who refused to permit entry to the health department on the first scheduled inspection date. Therefore, the defendant was aware of at least one of the health department's attempts to inspect.

[27] The defendant has also alleged violations of state constitutional rights in regard to his claim of excessive force, but he has failed to provide an independent analysis of them as required by *State* v. *Geisler*, supra, 222 Conn. 684–86. Contrary to the defendant's contention, his analysis under *Geisler* with respect to his previous claim that the issuance of the administrative search warrant in an ex parte proceeding was constitutionally improper does not satisfy this requirement. See part III of this opinion. "We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the defendant's claim." (Internal quotation marks omitted.) *State* v. *Santos*, 318 Conn. 412, 414 n.1, 121 A.3d 697 (2015). Accordingly, we analyze the defendant's excessive force claim under the federal constitution only.

[28] The state contends that although the defendant raised this claim during oral argument on his motion to suppress evidence, the trial court did not explicitly rule on it and, thus, the defendant's claim is unpreserved. See Practice Book § 60-5. We disagree. The trial court denied the defendant's motion to suppress and concluded that the police presence during the execution of the administrative search warrant was "passive" and "not intrusive in any way." We can infer from our review of the transcript of the trial court's ruling on the defendant's motion to suppress that all claims presented by the defendant in support of his motion were denied. Thus, we conclude that the defendant's claim was adequately preserved and, accordingly, we address it.